FOR LEGAL USE ONLY

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 0 1 2019

SEAN F. MCAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# EASTERN DISTRICT OF WASHINGTON


CLIFTON D. OLIVER,

       PLAINTIFF,

    VS.

CITY OF SPOKANE,
PROVIDENCE HOSPITALS,
NAPHCARE, ET AL,
      DEFENDANTS.

CASE NUMBER: 2:19-CV-042-TOR

CIVIL RIGHTS
COMPLAINT.

JURY DEMAND?

☒ YES

For Legal Use Only

FOR LEGAL USE ONLY

( 1 )

I. COMPLAINT.

42 U.S.C 1983
WASHINGTON STATE CLAIMS OF ACTION.

II. PLAINTIFF INFORMATION.
ATTORNEYS AND COURT ONLY

CLIFTON D. OLIVER
2002 S.W. SALMON #31
REDMOND OR 97756

III. PRISONER STATUS.
PRETRIAL DETAINEE
CLIFTON D OLIVER #223732
1100 W. MALLON AVE
SPOKANE WA 99260

For Legal Use Only

FOR LEGAL USE ONLY

IV.   DEFENDANT(S) INFORMATION

DEFENDANT 1:   SPOKANE POLICE DEPARTMENT (SPD)
RESPONDEAT SUPERIOR
1100 W. MALLON
SPOKANE WA. 99260

DEFENDANT 2:   HOLY FAMILY MEDICAL CENTER (HFMC)
RESPONDEAT SUPERIOR
5633 N. LIDGERWOOD
SPOKANE WA 99207

DEFENDANT 3:   SACRED HEART MEDICAL CENTER (SHMC)
RESPONDEAT SUPERIOR
101 W. 8TH AVE
SPOKANE WA 99204

For Legal Use Only

DEFENDANT 4:   OFFICER J.W MEYER #1324
SPOKANE POLICE OFFICER
1100 W. MALLON
SPOKANE WA 99260

FOR LEGAL USE ONLY

# DEFENDANT(S) CONTINUED

DEFENDANT 5:   OFFICER TYLOCK #1325
SPOKANE POLICE OFFICER
1100 W. MALLON
SPOKANE WA 99260

DEFENDANT 6:   OFFICER WILKE #1337
SPOKANE POLICE OFFICER
1100 W. MALLON
SPOKANE WA 99260

DEFENDANT 7:   OFFICER D. ERICKSEN #527/A115
SPOKANE POLICE DEPARTMENT
1100 W. MALLON
SPOKANE WA 99260

DEFENDANT 8:   JOHN DOE OFFICER "A" #X114
SPOKANE POLICE DEPARTMENT
1100 W. MALLON
For Legal Use Only
SPOKANE WA 99260

DEFENDANT 9:   JOHN DOE OFFICER "B"
SPOKANE POLICE DEPARTMENT
1100 W. MALLON
SPOKANE WA 99260

FOR LEGAL USE ONLY

DEFENDANT(S) CONTINUED

DEFENDANT 10:   JANE DOE (ASIAN) DOCTOR "A"
                DOCTOR
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT 11:   JOHN DOE NURSE (BEARD) "B"
                NURSE
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT 12:   JANE DOE NURSE "C"
                NURSE / RECEPTION
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT 13:   JOHN DOE DOCTOR "D" (RED HAIR)
                DOCTOR MORNING / SWING SHIFT
                5633 N. LIDGERWOOD
                For Legal Use Only
                SPOKANE WA 99207

DEFENDANT 14:   JANE DOE NURSE "E"
                NURSE / MEDS IN DRINK
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT(S) CONTINUED

DEFENDANT 15:   JANE DOE (BLACK WOMAN) "F"
                SECURITY / HFMC
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT 16:   JOHN DOE "G"
                SECURITY / HFMC
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT 17:   JOHN DOE "H"
                SECURITY / HFMC
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT 18:   JOHN DOE "I" (CAMPBELL OR BOWES?)
                SECURITY / HFMC
                5633 N. LIDGERWOOD
                SPOKANE WA 99207

DEFENDANT 19:   RAYMOND CAMBELL
                SECURITY / SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

For Legal Use Only

DEFENDANT(S) CONTINUED

DEFENDANT 20:   ADAM BOWES
                SECURITY / SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

DEFENDANT 21:   JOHN DOE "J" (SECURITY CAR)
                SECURITY / SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

DEFENDANT 22:   JOHN DOE "K" (DRAGONFLY TATTOO)
                SECURITY / SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

DEFENDANT 23:   JOHN DOE "L" (HEAD SECURITY)
                SECURITY / SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

For Legal Use Only

DEFENDANT 24:   JOHN DOE "M"
                SECURITY / SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

FOR LEGAL USE ONLY

DEFENDANT(S) CONTINUED

DEFENDANT 25:   JANE DOE "N" (7TH AVE PARKING LOT)
                SECURITY / SHMC / 4:15 AM
                101 W. 8TH AVE / 122 W. 7TH AVE.
                SPOKANE WA 99204

DEFENDANT 26:   JANE DOE (NURSE) "1"
                NURSE / PSYCH UNIT SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

DEFENDANT 27:   JOHN DOE (NURSE) "2"
                NURSE / PSYCH UNIT SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

DEFENDANT 28:   JOHN / JANE DOE (DOCTOR) "3"
                DOCTOR / PSYCH UNIT SHMC
                101 W. 8TH AVE
                SPOKANE WA 99204

DEFENDANT 29:   JOHN DOE "4"
                PSYCHIATRIST / DOCTOR
                101 W. 8TH AVE
                SPOKANE WA 99204

For Legal Use Only

DEFENDANT(S) CONTINUED

DEFENDANT 30:    JANE DOE (DOCTOR/NURSE) "5"
NURSE
101 W. 8TH AVE
SPOKANE WA 99204

DEFENDANT 31:    ROSALIE DEXTER
X-RAY TECH / SHMC
101 W. 8TH AVE
SPOKANE WA 99204

DEFENDANT 32:    NATALYA BURDA
X-RAY TECH / SHMC
101 W. 8TH AVE
SPOKANE WA 99204

DEFENDANT 33:    SCOTT STALCY
X-RAY TECH / SHMC
101 W. 8TH AVE
For Legal Use Only
SPOKANE WA 99204

DEFENDANT 34:    OFFICER Z. JOHNSON /JOHN DOE OFFICER
SPOKANE POLICE OFFICER
1100 W. MALLON
SPOKANE WA 99260

FOR LEGAL USE ONLY    V. STATEMENT OF FACTS:

# ✳ SPOKANE POLICE DEFENDANTS ✳

1). ON 9-17-2018 AT OR ABOUT 01:45 AM, OFFICER J. MEYER 1324, OF THE SPOKANE POLICE DEPARTMENT RESPONDED TO A COMPLAINT ABOUT PLAINTIFF NOT LEAVING THE PROPERTY OF THE JACK·N·THE BOX ON NORTH DIVISION STREET AND FOOTHILLS IN SPOKANE WA.

2). DEFENDANT MEYERS HAD ON A BODY WIRE / VIDEO CAMERA (BODY CAM) PER SPOKANE POLICE DEPARTMENT (SPD) POLICY.

3). DEFENDANT MEYER MADE CONTACT WITH PLAINTIFF , MR. CLIFTON OLIVER NEAR THE ENTRANCE OF THE DRIVE THRU OF THE JACK N THE BOX.

4). DEFENDANT MEYER WAS TOLD BY DISPATCH THAT PLAINTIFF MAY POSSIBLY BE HIGH ON A CONTROLLED SUBSTANCE.    For Legal Use Only

5). PLAINTIFF ADVISED DEFENDANT MEYERS OF THE FOLLOWING: (1) THAT THERE WERE ARMED PEOPLE ATTEMPTING TO KILL HIM, (2) THAT HE DIDN'T KNOW WHO THEY WERE, (3) THAT THE GUN MEN HAD HIM SURROUNDED AND WERE ACROSS THE STREET AT THE AUTO CREDIT USED CAR PARKING LOT AND ON THE OTHER SIDE OF JACK N THE BOX IN THE

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

ENTERPRISE RENT A CAR PARKING LOT.

6). DEFENDANT MEYERS DIDN'T CONTACT OTHER OFFICERS TO INVESTIGATE AND HE DID NOT CONDUCT AN INVESTIGATION HIMSELF IN REGARDS TO PLAINTIFFS COMPLAINT / CONCERNS.

7). PLAINTIFF HAD ADVISED DEFENDANT MEYERS THAT HE WAS JUST RECENTLY RELEASED FROM SACRED HEART MEDICAL CENTER (SHMC). PLAINTIFF STILL HAD THE GREEN ADMISSION BRACELET ON FROM SHMC.

8). DEFENDANT HAD A DUTY TO INVESTIGATE PLAINTIFFS CLAIM OF BEING HARRASSED BY GUN MEN, BUT FAILED TO INVESTIGATE.

9). DEFENDANT MEYER ASSUMED THAT PLAINTIFF WAS PARANOID AND OR HIGH.

For Legal Use Only

10). DEFENDANT MEYER VERBALLY BROADCASTED PLAINTIFF'S NAME AND WHERE HE WAS GIVING HIM A COURTESY RIDE.

11). PLAINTIFF WAS IN FEAR FOR HIS LIFE. HE ASKED DEFENDANT WHY HE WAS SAYING HIS NAME SO LOUD AND WHERE THEY WERE GOING.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

12). DEFENDANT MEYER PROVIDED PLAINTIFF WITH A RIDE TO RITE AID ON DIVISION AND CENTRAL. PLAINTIFF EXPRESSED HIS CONCERNS THAT THE GUN MEN MAY FOLLOW THEM UP TO THE RITE AID.

13). DEFENDANT MEYER DIDNT BELEIVE THAT PLAINTIFF WAS IN DANGER. HE DID NOT STAY AROUND THE AREA TO OBSERVE THE RITE AID STORE FOR POTENTIAL SUSPECTED GUN MEN WHO MAY HAVE FOLLOWED HIM AND PLAINTIFF.

14). DEFENDANT MEYER HAD AN DUTY TO INVESTIGATE PRIOR TO FORMING THE BELIEF THAT PLAINTIFF WAS PARANOID.

15). DEFENDANT MEYER DROPPED PLAINTIFF OFF AT RITE AID AND HAD NO CONCERNS ABOUT TAKING PLAINTIFF TO BE EVALUATED AT HOLY FAMILY MEDICAL CENTER. DEFENDANT LEFT THE SCENE AND HEADED SOUTH TOWARDS DOWNTOWN.

16). DEFENDANT MEYER'S PATROL VEHICAL IS EQUIPED WITH GPS, VIDEO, AUDIO. THIS INFORMATION IS STILL AVAILABLE ALONG WITH DEFENDANT MEYERS BODY CAM.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

17.) DEFENDANT MEYER DROPPED PLAINTIFF OFF AROUND 2 AM. RITE AID HAD CALLED 911 OR CRIME CHECK IN REGARDS TO OLIVER 30-40 MINUTES LATER. DEFENDANT MEYER WAS IN AREA AND KNEW THE CALL WAS ABOUT PLAINTIFF. ANOTHER OFFICER ALSO ARRIVED.

18). PLAINTIFF TOLD DEFENDANT MEYER AND OR TYLOC 1325/WILKE 1337, THAT THE GUN MEN HAD FOLLOWED HIM UP TO RITE AID AND HAD HIM SURROUNDED AGAIN AND THAT THEY WERE ACROSS THE STREET.

19). DEFENDANT'S BELIEVED PLAINTIFF TO STILL BE PARANOID AND DID NOT CONDUCT A INVESTIGATION BY SEARCHING/PATROLING THE AREA AROUND RITE AID FOR GUNMEN.

20). DEFENDANT MEYER ASKED PLAINTIFF IF HE WANTED TO GO TO HFMC. HE AGREED.

For Legal Use Only

21). PLAINTIFF HAD TOLD DEFENDANT OFFICERS THAT THE "DUDES" (GUNMEN) WOULD BE STUPID TO FOLLOW HIM INTO HOSPITAL.

22). DEFENDANT OFFICERS ESCORTED PLAINTIFF INTO HOSPITAL TO GET REGISTERED. DEFENDANTS DIDNT TELL PLAINTIFF HE WAS GOING TO BE

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

HELD THERE INVOLUNTARILY FOR EVALUATION.

23). WHILE IN HFMC ER WAITING ROOM GETTING HIS VITALS DONE BY NURSE, PLAINTIFF ADVISED DEFENDANT OFFICERS THAT A MAN HAD ENTERED WAITING ROOM AND HE MAY BE ONE OF THE GUNMEN.

24). PLAINTIFF INTENTIONALLY STARTED SAYING SENTENCES THAT DIDNT MAKE SENCE LIKE, " THE SKY IS TEN DIFFERENT COLORS AND THE CLOUDS ARE WHISPERING MY NAME", WHILE WINK- ING AT OFFICERS AND NURSE. PLAINTIFF ASKED THEM TO ESCORT HIM TO A ROOM IN ER IN WHICH THEY DID.

25). DEFENDANT OFFICER(S) DIDNT BELIEVE THAT THE MAN WHO HAD JUST ENTERED ER WAITING ROOM WAS ONE OF THE GUNMEN PLAINTIFF HAD MADE For Legal Use Only COMPLAINTS ABOUT. THEY DID NOT MAKE ANY ATTEMPT TO SPEAK WITH HIM AT THAT POINT.

26). DEFENDANTS STILL HAD AN DUTY TO INVESTIGATE PLAINTIFFS COMPLAINT.

27). PLAINTIFF WAS ESCORTED TO THE FIRST ROOM ON THE NORTH SIDE OF THE EMERGENCY ROOM (ER). OFFICER DEFENDANTS AND JANE DOE NURSE LISTENED TO PLAINTIFF DESCRIBE THE EVENTS PRIOR TO HIM COMING TO ER INCLUDING WHAT KIND OF CARS THE SUSPECTED GUN(MEN) WERE DRIVING. JANE DOE(A) AND JOHN DOE(B) WERE PRESENT.

28). PLAINTIFF DESCRIBED THE GUNMAN IN THE WAITING ROOM AS HAVING A TATTOO OF THE LETTER "N" THAT WAS INSIDE OF A CIRCLE OR DREAMCATCHER. HE TOLD THE OFFICERS THAT THE MAN WAS JUST ESCORTED INTO ER AND THAT HE WAS SCARED.

29). BEFORE DEFENDANT OFFICERS LEFT THE PLAINTIFFS ROOM, THE PLAINTIFF ASKED THE OFFICERS TO TRUST HIS PREMINITION OF THE MAN BEING A GUNMAN AND TO PLEASE SEARCH HIM BEFORE THEY LEFT ER. PLAINTIFF SPECIFICALLY ASKED DEFENDANT MEYERS TO TRUST HIM ON THIS AND TO PROMISE HIM THAT HE WOULD SEARCH OR VISIT WITH THE MAN.

30). DEFENDANT MEYER ACKNOWLEDGED PLAINTIFFS REQUEST WITH A HEAD NOD AND WENT OVER TO THE GUNMANS ROOM TO SPEAK TO HIM, DEFENDANT OFFICERS DURING THEIR

FOR LEGAL USE ONLY

INVESTIGATION DISCOVERED THE MAN WAS ARMED WITH AN AUTOMATIC WEAPON (GUN) AND CONFINSCATED IT.

31). CIVILIANS ARE NOT ALLOWED TO BE ARMED WITH WEAPONS IN AN HOSPITAL EMERGENCY ROOM.

32). DEFENDANT OFFICERS QUESTIONED THE MAN ABOUT THE TATTOO NEXT TO HIS RIGHT EYE AND WHY HE WAS IN THE HOSPITAL WITH A GUN. THE MAN STATED THAT HE WAS FOLLOWING PLAINTIFF BECAUSE HE HAD SEXUALLY ASSAULTED HIS GIRLFRIEND/FRIEND.

33). DEFENDANT OFFICER(S) CAME OUT OF GUNMANS ROOM AND RELEASED THE CLIP, JACKED THE BULLET OUT OF CHAMBER, AND LOCKED THE GUN IN ER HALLWAY IN FRONT OF NURSES COVE.

For Legal Use Only

34). DEFENDANT OFFICERS ESCORTED THE GUNMAN FROM ER TO MEET WITH ALLEGED RAPE VICTIM IN THE WAITING ROOM. OFFICERS REQUESTED A RAPE KIT TO BE ADMINISTERED AND ALLEGED VICTIM COMPLIED.

35). DEFENDANT OFFICERS DIDNT ASK ANYONE ELSE IN WAITING ROOM IF THEY HAD ANY

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

WEAPONS OR SEARCH ANYONE ELSE AT THAT TIME DURING THEIR INVESTIGATION. PLAINTIFF PREVIOUSLY COMPLAINED OF MULTIPAL GUNMEN AND DID NOT TAKE INTO CONCIDERATION THAT OTHER MEN HAD ALSO REGISTERED INTO ER.

36). DEFENDANT OFFICER(S) OBTAINED THE GUN MANS NAME, RAN A BACKGROUND CHECK AND DISCOVERED THAT HE WAS A FELON. DEFENDANTS ALSO OBTAINED THE ALLEGED RAPE VICTIMS NAME AND HER FRIENDS.

37). DEFENDANT OFFICER(S) LATER DISCOVERED THAT THE ALLEGED RAPE VICTIMS RAPE KIT TEST RESULTS CAME BACK NEGATIVE AND THAT THE WOMEN ADMITTED TO FABRICATING THE SEXUAL ASSAULT AGAINST PLAINTIFF.

38). DEFENDANTS KNOW THAT ITS A STATE FEDERAL CRIME FOR AN FELON TO BE IN POSSESSION OF A FIRE ARM.
For Legal Use Only

39), DEFENDANT OFFICERS KNOW THAT THE GUN MAN IS AN CONFIDENTIAL INFORMANT.

40). DEFENDANT OFFICERS DISCOVERED THAT THE PLAINTIFF WAS NOT PARANOID AND THAT HIS LIFE WAS INDEED IN DANGER OF DEATH.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

41). DEFENDANT OFFICER(S) DID NOT RETURN TO PLAINTIFF'S HOSPITAL ROOM TO ADVISE HIM OF THEIR INVESTIGATION. OFFICERS DID NOT APOLIGISE FOR BEING WRONG, AND NOT TAKING HIM SERIOUSLY.

42). DEFENDANT OFFICER(S) HAD A DUTY TO PROTECT PLAINTIFF WHILE IN ER ROOM AND FAILED TO NOTIFY SECURITY OF THE FACT THAT PLAINTIFF WAS IN DANGER.

43). DEFENDANT OFFICER(S) FAILED TO NOTIFY THE HOSPITAL DEFENDANTS OF THE DANGER TO PLAINTIFF'S LIFE AND THE CONCERNS HE HAD PRIOR TO ADMITTING HIM INTO ER AND AFTER THE DISCOVERY OF THE FIRST GUNMAN. OFFICERS DID NOT ADMIT THEY WERE WRONG ABOUT HIS COMPLAINTS.

44). DEFENDANT OFFICER(S) FAILED TO [1] TAKE PLAINTIFFS COMPLAINT SERIOUSLY, [2] TO PROTECT HIM, [3] AND PLACE HIS LIFE AT RISK, [4] AND UNLAWFULLY DETAINED HIM.

45). SPOKANE POLICE DEPARTMENT PLACED A LITIGATION HOLD ON REPORTS, BODY CAMS AND VIDEO EVIDENCE OF THE INCIDENT ABOVE THATS DIFFERENT FROM INCIDENT # 2018-20185740.

For Legal Use Only

46). DEFENDANT OFFICER(S) RESPONDED TO OR WAS PRESENT WHEN HFMC CALLED 911... IN REGARDS TO GUNMAN #2 IN PARAGRAPHS 89 THROUGH 94.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

# * HOLY FAMILY M.C. DEFENDANTS *

47). UPON PLAINTIFF'S ARRIVAL TO ER ROOM, JANE DOE (A) (ASIAN DOCTOR), JOHN DOE NURSE (B), JANE DOE (C) HAD KNOWLEDGE OF THE INFORMATION IN PARAGRAPH 27 THROUGH 34.

48). PLAINTIFF WAS NOT TOLD BY POLICE OR HOSPITAL DEFENDANTS THAT HE WAS INVOLUNTARILY COMMITTED FOR EVALUATION AND THAT HE WASENT FREE TO LEAVE.

49). PLAINTIFF WAS ADMITTED INTO ER AT OR ABOUT 3AM. HE ADVISED REGISTRATION AND HOSPITAL DEFENDANTS THAT HIS ALLERGIC MEDICAL HISTORY INCLUDED HALDAL, ZYPREXA, ECT.

For Legal Use Only

50). HOSPITAL DEFENDANTS WERE AWARE OF PLAINTIFFS PRIOR MEDICAL HISTORY AND ALLERGY'S TO MEDICATIONS.

FOR LEGAL USE ONLY

(19)

FOR LEGAL USE ONLY

51). PROVIDENCE | SHMC | HFMC HAVE A WORK PLACE VIOLENCE PLAN POLICY AND CAN PROVIDE THAT INFORMATION.

52). JANE DOE (A) WAS ADVISED BY ALLEGED RAPE VICTIM THAT PLAINTIFF HAD ALLEGEDLY RAPED HER. THE ALLEGED RAPE VICTIM WAS ESCORTED TO A ROOM ALONG THE NORTH WALL OF THE ER ROOM OR ROOM ALONG NORTH WEST SIDE OF ER. ALLEGED VICTIM WAS ACCOMPANIED WITH FRIENDS. JOHN DOE (B) WAS PRESENT.

53). JOHN DOE (B) WAS IN PLAINTIFF'S ROOM DOING HIS VITALS. PLAINTIFF ADVISED JOHN DOE (B) THAT HE WAS GOING TO PUT ON A REMORSE-FUL ACT THAT WOULD GIVE THE ALLEGED RAPE VICTIM ENCOURAGEMENT TO FOLLOW THROUGH WITH THE RAPE KIT.

54). JANE DOE (A), JANE DOE (C), AND UPON INFOR-MATION AND BELIEF HFMC SECURITY | POLICE (SPD), HAD ADVISED ALLEGED RAPE VICTIM TO CONSENT TO A RAPE KIT. RAPE VICTIM WAS RELUCTANT TO PROCEED WITH TEST UNTIL SHE HEARD PLAINTIFF PUTTING ON AN REMORSEFUL ACT.

For Legal Use Only

FOR LEGAL USE ONLY

55). UPON HEARING PLAINTIFF, JANE DOE (A) AND (C) CAME TO HIS ROOM IN WHICH HE STARTED WINKING AT THEM. JOHN DOE (B) ADVISED THE DOCTOR AND NURSE THAT PLAINTIFF TOLD HIM THAT HE DIDNT RAPE HER/THEM AND TO PLAY ALONG.

56). ALLEGED VICTIM WAS ENCOURAGED BY FAKE ADMISSION OF RAPING HER TO FOLLOW THROUGH WITH RAPE KIT.

57). PLAINTIFF THEN EXPLAINED TO JANE DOE (A), (C), AND JOHN DOE (B) THAT THE ALLEGATION OF RAPE WAS FALSE AND WAS A PREMEDITATED EXCUSE TO MURDER OR ASSAULT HIM.

58). PLAINTIFF EXPLAINED TO A, B, AND C THAT SPD OFFICERS HAD FOUND A GUN ON THE BOYFRIEND PRIOR TO THE GIRLS ENTERING ER.

For Legal Use Only

59). PLAINTIFF CONTINUED WITH HIS ACTING IN-WHICH HE CLAIMED THAT HE HAD STD.

60). A NURSE THEN ESCORTED A HEAVY SET WHITE WOMAN INTO ROOM NEXT DOOR/WEST OF PLAINTIFFS ROOM. SHE WAS WITH A WHITE MALE, ABOUT 6'4 210lbs, FACIAL HAIR, SHORT HAIR ABOUT 3 INCHES IN LENGTH, AND

FOR LEGAL USE ONLY

(21)

FOR LEGAL USE ONLY

DARK CLOTHING. UPON INFORMATION AND BELIEF, THERE WAS A BLACKMAN ALSO WITH A GREEN HOODIE AND SHORT HAIR, SAME HEIGHT.

61). THE ALLEGED RAPE VICTIM WAS ASKED TO DESCRIBE PLAINTIFF IN WHICH SHE COULDNT BY HOSPITAL STAFF. DOCTOR TOLD HER THAT THE TESTS CAME BACK NEGATIVE AND THAT SHE HAD NOT BEEN RAPED, THE DOCTOR ALSO TOLD HER THAT SHE HAD FRESH FINGER NAIL SCRATCH MARKS ON HER VAGINA AS IF SHE SCRATCHED HERSELF.

62). UPON INFORMATION AND BELIEF DOCTOR, JOHN DOE NURSE(B), SECURITY AND OR POLICE WERE PRESENT WHEN THE WOMAN ADMITTED TO FABRICATING A RAPE INCIDENT AGAINST THE PLAINTIFF.

For Legal Use Only

63). THE FAKE VICTIM (FORMALLY KNOWN AS RAPE VICTIM) WAS ADVISED BY DOCTOR AND OR NURSES, SECURITY THAT THEY CAN BE CHARGED CRIMINALLY. THE WOMAN TRIED TO LEAVE ROOM AND GOT COMBATIVE WITH HOSPITAL STAFF.

FOR LEGAL USE ONLY

64). THE FAKE VICTIM THEN CALLED HER FRIEND ON THE PHONE AND PLACED THE CONVERSATION ON SPEAKER. HOSPITAL STAFF AND OR POLICE WERE PRESENT DURING CALL.

65). PLAINTIFF HAD TOLD JOHN DOE (B) WHEN HE CAME TO HIS ROOM TO DO VITALS THAT THE GUY IN THE ROOM NEXT TO HIM HAD A GUN. JANE DOE (A) DOCTOR WALKED BY PLAINTIFFS DOOR AND HE TOLD HER ABOUT GUN VERBALLY AND WITH GUN HAND SIGN.

66). JANE AND JOHN DOE (A/B) IGNORED PLAINTIFFS ALLEGATIONS.

67). THERE ARE VIDEO CAMERAS FACING THE NORTH WALL WHERE PLAINTIFFS ROOM WAS.

For Legal Use Only

68). THE MAN NEXT DOOR TO PLAINTIFFS ROOM TRIED TO COME IN TO HIS ROOM AFTER PLAINTIFF CLOSED HIS DOOR TWICE.

69). PLAINTIFF LEAVES HIS ROOM IN A HURRY AFTER THE MAN RETURNED TO HIS ROOM.

FOR LEGAL USE ONLY

70). PLAINTIFF GOES TO THE SOUTHSIDE OF ER ROOM WHERE HE SITS IN A EMPTY ROOM WITH CURTAIN CLOSED AFTER HE TELLS NURSES IN COVE THAT THE MAN IN ROOM NEXT TO HIM HAS A GUN. JANE AND JOHN DOE (A/B) COME TO THE ROOM AND WERE ADVISED OF THE 2ND GUNMAN.

71). JANE AND JOHN DOE (A/B) REQUESTED PLAINTIFF TO RETURN TO HIS ASSIGNED ROOM AFTER HE EXPLAINED THAT HE WAS FEARFUL AND HIS LIFE WAS IN DANGER.

72). SECURITY CAME TO THE ROOM AND THREATEND TO FORCEFULLY MOVE HIM BACK TO ASSIGNED ROOM IF HE DIDN'T GO VOLUNTARILY.

73). UPON INFORMATION AND BELIEF, SOME OF THE SECURITY GUARDS WORKING AT HFMC DURING GRAVEYARD SHIFT ON SEPTEMBER 17, 2018 WERE ALSO WORKING AT SACRED HEART ON 9-26-18 DURING DAY AND SWING SHIFT AND ON 9-30-18 DURING GRAVEYARD SHIFT.

74). PLAINTIFF COMPROMISED WITH HOSPITAL STAFF WITH THE PROMISE THAT HE WOULD RETURN TO HIS ROOM IF THEY WOULD CHECK

For Legal Use Only

FOR LEGAL USE ONLY

TO SEE IF HIS NEIGHBORS HAD GUN IN THE ROOM.
PLAINTIFF ADVISED THEM THAT THE GUNMAN TRIED
TO PREVIOUSLY ENTER HIS ROOM TWICE WITH GUN, AND
THAT A BULLET WAS JACKED INTO CHAMBER.

75). PLAINTIFF RETURNED TO HIS ROOM WITHOUT INCIDENT.
HOSPITAL STAFF ASKED WOMAN AND GUNMAN IF HE HAD
A GUN, THE GUNMAN MADE A "CLICK CLACK" SOUND WITH
BED RAIL WHILE SAYING" IT MUST HAVE BEEN THE BED RAIL".

76). UPON INFORMATION AND BELIEF RAYMOND CAMPBELL,
ADAM BOWES, AND OR JOHN DOE SECURITY (FROM 9-30-18
INCIDENT) ENTERED PLAINTIFFS ROOM AND GRABED HIS
ARMS IN AN AGRESSIVE MANNER WITHOUT EXPLINATION
CAUSING HIM TO RESIST BY TENSING UP. JANE DOE
SECURITY (BLACK WOMAN) ENTERED ROOM WITH DOCTOR
JANE DOE A, C, AND JOHN DOE B  WHO TOLD THE
PLAINTIFF HE WAS GOING TO RECEIVE AN INJECTION.
PLAINTIFF TOLD HOSPITAL STAFF THAT HE DIDNT WANT
ANY POISONS IN HIS BODY. [For Legal Use Only] HOSPITAL DEFENDANTS
THEN SLAMED PLAINTIFF TO THE BED, RAYMOND
CAMPBELL / ADAM BOWES ELBOWED HIM IN HEAD ON
LEFT SIDE, THEN FORCIBLY HELD PLAINTIFFS HEAD
DOWN WITH ELBOW ON TEMPLE. OTHER SECURITY
WOULD HOLD PLAINTIFF DOWN BY PRESSIN THEIR
KNEE'S ON PLAINTIFF'S SHEENS ALONG NERVE
PRESSURE POINTS TO CAUSE EXTREME PAIN, CAUSING
HIM TO YELL AND SCREEM IN PAIN.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

77). Hospital Defendants forcibly injected Plaintiff with unwanted medications and knew that he had allergic reactions to the medications because they were listed as " allergic medications" in his medical records.

78). Plaintiff was not suffering from a grave disability or mental defect that would warrant the need for emergency forced medication

79). Plaintiff incorporates paragraphs 158 through 164 as fully stated herein.

80). Prior to 9-17-2018, Plaintiff's hospital records show that he has never been forcibly medicated in Providence Hospitals.

81). Plaintiff had history of visiting hospital to request drug treatment and was never rude, disruptive or assaultive towards any hospital staff.

For Legal Use Only

82). Defendants knew that there was no medical justification for the Haldol / Zyprexa injection.

83) Hospital Defendants knew that the injection would be conceivable only if the anti psychotic medication were to be taken on a long term basis and was not in his best medical interest in light of his history.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

84). HOSPITAL STAFF CAN NOT OFFER ANY MEDICAL EVIDENCE AS TO WHETHER THE ONE TIME HALDOL, ZYPREXA TREATMENT WOULD HAVE ANY POSITIVE EFFECT AT ALL ON PLAINTIFF OR AT ANYTIME AFTER HE WAS DISCHARGED FROM HOSPITAL THAT NIGHT.

85). HOSPITAL DEFENDANTS KNEW THAT THE INVOLUNTARY ADMINISTRATION OF THE ANTIPSYCHOTIC MEDICATIONS INTO PLAINTIFF WAS CLEARLY NOT IN " THE PATIENTS BEST MEDICAL INTREST" TO RISK SERIOUS MEDICAL CONSEQUENCES FOR A BENEFIT THAT, IF ONE RESULTS AT ALL, IS ONLY A TEMPORARY ALLEVIATION TO PUT A PATIENT TO SLEEP AND NOT A LONG-TERM REMEDY FOR A MENTAL ILLNESS.

86). HOSPITAL STAFF USED HALDOL ZYPREXA INJECTIONS AS A CONTROL DIVICE.

87). HOSPITAL DEFENDANTS KNOW THAT HALDOL CAN CAUSE SERIOUS SIDE EFFECTS MOST NOTABLY TARDIVE DYSKINESIA, WHICH IS A "VERY DISFIGURING SIDE EFFECT THAT CAN AFFECT MUSCLES ANYWHERE IN THE BODY".

88). HOSPITAL DEFENDANTS KNOW THAT TARDIVE DYSKINISIA CAN BE REVERSED "IN UP TO 50 PERCENT OF PATIENTS, IF DETECTED EARLY, BUT IS IRREVERSIBLE IN AT LEAST 50 PERCENT OF PATIENTS, EVEN WHEN ITS DETECTED EARLY.

FOR LEGAL USE ONLY

89). PLAINTIFF PLACED HIS BED AGAINST DOOR TO LOCK IT. LESS THAN 7 MINUTES AFTER HOSPITAL DEFENDANTS LEAVE HIS ROOM, GUNMAN #2 EXITS THE ROOM NEXT DOOR AND ATTEMPTS TO ENTER PLAINTIFFS ROOM BY TRYING TO OPEN HIS DOOR ARMED WITH A GUN.

90). DOCTOR JANE DOE (A) AND JANE DOE NURSES CAUGHT THE GUNMAN IN THE ACT OF TRYING TO ENTER PLAINTIFFS ROOM. AND ADVISED HIM TO "GET AWAY FROM THAT ROOM". AND ACKNOWLEDGED THAT HE HAD A GUN.

91). DOCTOR JANE DOE (A) LOOKED AT PLAINTIFF FROM DOCTORS/NURSES COVE IN SHOCK WHILE SAYING "WHAT HAVE WE DONE", TWICE. SHE AND OTHER NURSES THEN WENT TO THE GUNMANS ROOM.

92). THE GUNMAN BECAME HOSTILE WITH HOSPITAL STAFF. HE BEGAN TO BE AGRESSIVE, COMBATIVE, AND ASSAULTIVE WHILE ARMED WITH GUN TOWARDS EVERYONE IN THE ROOM,

For Legal Use Only

93). THE GUNMAN ALSO BROKE MEDICAL EQUIPMENT IN THE ROOM WHICH REQUIRED MAINTENCE TO FIX AND REINSTALL LATER THAT MORNING.

94). THE GUNMAN HAD THREATENED TO KILL PLAINTIFF AND HAD WANTED TO SHOOT THROUGH HIS ROOMS WALL WHILE HOSPITAL DEFENDANTS WERE IN ROOM.

FOR LEGAL USE ONLY

95). IN AN ATTEMPT TO SAVE PLAINTIFFS LIFE, DOCTOR JANE DOE (A) AND JOHN DOE (B) EXPLAINED TO GUNMAN THAT PLAINTIFF IS MENTALLY ILL AND WAS FORCIBLY MEDICATED PRIOR TO HIS ATTEMPT TO ENTER PLAINTIFFS ROOM.

96). HOSPITAL DEFENDANTS KNEW THERE WAS A SERIOUS POTENTIAL HOSTAGE SITUATION, AND FOLLOWED THEIR WORKPLACE VIOLENCE PLAN.

97). HOSPITAL DEFENDANTS ARE ALLOWED TO MAKE NEGOTIATIONS IN SITUATIONS, IN WHICH PEOPLES LIVES ARE AT RISK OF SERIOUS INJURY OR DEATH. THEY CONVINCED GUNMAN TO LEAVE ER AND HOSPITAL GROUNDS BEFORE CALLING CRIME CHECK TO REPORT INCIDENT.

98). HOSPITAL DEFENDANTS CONTINUED THROUGH OUT THE AFTERNOON AND EVENING TO UNKNOWINGLY MEDICATE PLAINTIFF WITH HALDOL AND OR ZYPREXA BY PLACING THE MEDICATIONS IN HIS LUNCH AND DINNER DRINKS.

For Legal Use Only

99). PLAINTIFF WAS RELEASED FROM HOSPITAL AROUND 11 PM ON 9-17-2018 WITHOUT AN APOLOGY

100). HOSPITAL DEFENDANTS PLACED A LITIGATION HOLD ON ALL VIDEO PRIOR TO PLAINTIFFS ADMISSION INTO HOSPITAL AND AFTERWARDS. THE VIDEO WAS GIVEN TO LAW

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

ENFORCEMENT DETECTIVES AND SAVED FOR PROVIDENCE ADMINISTRATION AND LAWYERS.

101) - HOSPITAL DEFENDANTS AND WITNESSES PROVIDED STATEMENTS TO LAW ENFORCEMENT AND PROVIDENCE ADMINISTRATION.

102). HOSPITAL DEFENDANTS WOULD AGREE THAT PLAINTIFF WAS NOT HAVING PARANOID DELUSIONS ON 9-17-2018 WHILE VISITING PROVIDENCES HOSPITALS.

103). HOSPITAL AND POLICE DEFENDANTS DID NOT PROVIDE PLAINTIFF WITH A RIDE OR ESCORT AWAY FROM HOSPITAL TO ENSURE HIS SAFETY. PLAINTIFF ASKED FOR A COMPLAINT FORM FROM NURSES AND DOCTORS ON 3 DIFFERENT OCCASIONS THROUGHOUT THE DAY WHEN HE WOKE UP FOR MEALS AND BEFORE HE LEFT. HOSPITAL DEFENDANTS REFUSED TO PROVIDE COMPLAINT FORM.

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

# ✳ 9-26-2018, POLICE DEFENDANTS ✳

104). ON 9-26-2018, OFFICER ERICKSEN ARRIVED AT 1615 E. QUEEN ST, AFTER HE WAS NOTIFIED OF A POSSIBLE ARMED SUICIDAL BLACK MALE BY THE NAME OF CLIFTON OLIVER. DEFENDANT ERICKSEN WAS AWARE THAT THE CALL CAME FROM A UNIDENTIFIED CALLER.

105). DEFENDANT ERICKSEN AND OTHER OFFICERS WHO ARRIVED ON SCENE TO 1615 E. QUEEN OR ON THE 1600 BLOCK OF E. QUEEN ST. ALL WORE BODY CAMERAS AND THEY WERE WORKING.

106). THE OTHER OFFICERS WHO ARRIVED HAVE NAMES AND WORK FOR SPOKANE POLICE DEPARTMENT. PLAINTIFF CALLS THEM JOHN DOE 1, 2, AND 3 IN THIS SECTION OF ALLEGED FACTS.

For Legal Use Only

107). PLAINTIFF WAS SITTING ON CURB IN FRONT OF 1615 E. QUEEN ST WHICH IS A WHITE HOUSE WITH A FENCE GOING AROUND THE PROPERTY.

108). DEFENDANT ERICKSEN WAS THE FIRST PERSON TO MAKE CONTACT WITH PLAINTIFF IN REGARDS TO COMPLAINT.

FOR LEGAL USE ONLY

109). PLAINTIFF ASKED OFFICERS FOR SOME WATER WHILE EXPLAINING HIS DISCOVERY OF WHAT HE ASSUMED TO BE BURIED UNDER THE TOMATOE GARDEN IN THE BACKYARD OF THE HOUSE. ( POSSIBLE BURIED BODIES)

110). PLAINTIFF EXPLAINED THAT HE FOUND A PAIR OF WOMENS RED PANTS (SIZE 9), AND MATERIAL HE BELIEVED MAY HAVE BEEN BONE AND ADVISED THEM THEY WERE IN THE BUCKET OF CANS.

111). JOHN DOE OFFICER (A) WALKED UP TO THE BUCKET AND SAID "THERE'S NO RED PANTS HERE, JUST CANS AND GARBAGE". JOHN DOE (A) LIED ABOUT WHAT WAS IN THE WHITE BUCKET.

112). JOHN DOE OFFICER (A) BODY CAMERA SHOWS THE RED PANTS, GREEN GIFT BAG PARTS, CANS, AND ROCK/ BONE MATERIAL. JOHN DOE OFFICER (B) ALSO LOOKED IN CAN AS HE WALKED TO THE BACKYARD.

113). OFFICER ERICKSEN EVENTUALLY PROVIDED PLAINTIFF WITH SOME WATER THEN REQUESTED HIM TO MOVE AWAY FROM BUCKET. PLAINTIFF EXPLAINED THE SITUATION IN REGARDS TO HAVING AN UNKNOWN MAN CALLING POLICE. PLAINTIFF TOLD DEFENDANT ERICKSEN THAT HE WAS NOT SUICIDAL, HAD NO GUN, AND THAT HE BELIEVED THERE WERE POSSIBLY BODIES UNDER GARDEN.

For Legal Use Only

FOR LEGAL USE ONLY

114). PLAINTIFF DID NOT MENTION BUTTERFLY'S TO DEFENDANTS - BODY CLAM AND POLICE REPORT ARE IN CONFLICT.

115). DEFENDANTS KNEW THE HOUSE AT ONE TIME BELONGED TO A DRUG DEALER BY THE NAME OF ROBERT ADAMS. MR. ADAMS WAS ALSO KNOWN TO HAVE A VIOLENT CRIMINAL HISTORY.

116). DEFENDANT OFFICERS ARE FAMILIAR WITH THE PAST INVESTIGATION OF THE "SERIAL KILLER" ROBERT YATES' WHOS VICTIMS WERE BURIED IN HIS BACKYARD GARDENS.

117). DEFENDANT OFFICER'S WENT INTO BACKYARD AND SEEN WHERE PLAINTIFF WAS DIGGING AND THE PULLED PLANTS.

118). DEFENDANT ERICKSEN UNLAWFULLY HANDCUFFED PLAINTIFF KNOWING HE WAS NOT A DANGER TO HIM- SELF OR OTHERS. PLAINTIFFS CONCERNS AND EXPLANATION OF EVENTS LEADING UP TO HIS ARRIVAL WAS COHERENT ALONG WITH HIS CALM ATTITUDE AND BODY LANGUAGE.

For Legal Use Only

119). DEFENDANT ERICKSEN ALONG WITH JOHN DOE (A) AND (B) AGREED TO HAVE PLAINTIFF TAKEN TO SACRED HEART MEDICAL CENTER FOR AN EMERGENCY EVALUATION IN THE MENTAL HEALTH UNIT.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

120). DEFENDANT ERICKSEN DID NOT TELL PLAINTIFF THAT HE WAS GOING TO TRY AND COMMIT HIM TO HOSPITAL.

121). DEFENDANT ERICKSEN WAS PRESENT WHEN PLAINTIFF ADVISED RECEPTIONIST AND OR HOSPITAL STAFF OF HIS ALLERGIES TO HALDOL, ZYPREXIA, ECT.

122). DEFENDANT ERICKSEN ALONG WITH DEFENDANT RAYMOND CAMPBELL AND HOSPITAL STAFF ASSAULTED PLAINTIFF AND PLACED HIM IN FOUR POINT RESTRAINTS BECAUSE HE DIDNT WANT TO CHANGE CLOTHES AND STAY AT HOSPITAL.

123). DEFENDANT CAMPBELL ALONG WITH OTHER JOHN DOE SECURITY AND NURSES USED PAINFUL NERVE PRESSURE POINTS ON HEAD, FINGERS, LEGS, AND ANKLE, TO CAUSE EXTREME PAIN.

For Legal Use Only

124). DEFENDANT ERICKSEN FABRICATED HIS INCIDENT REPORT IN BAD FAITH AND UNDER PENALTY OF PERJURY WITH THE BELIEF THAT IT WOULD LEGITIMIZE DEFENDANT OFFICERS REASONS TO HAVE PLAINTIFF HOSPITALISED. DEFENDANT(S) REPORT DID NOT MAKE A SHOWING THAT PLAINTIFF WAS A DANGER TO HIMSELF OR OTHERS.

FOR LEGAL USE ONLY

125). DEFENDANT ERICKSEN AND HOSPITAL STAFF DENIED PLAINTIFF ACCESS TO A PHONE TO CONTACT A FRIEND OR FAMILY MEMBER

126). DEFENDANT ERICKSEN KNOWS THE RIGHTS OF INVOLUNTARILY DETAINED PERSONS AS OUTLINED IN THE REVISED CODES OF WASHINGTON (RCWS), AND KNEW THAT PLAINTIFF HAD THE RIGHT TO WEAR HIS OWN CLOTHING AND TO KEEP AND USE HIS PERSONAL POSSESSIONS, EXCEPT WHEN DEPRIVATION OF SAME IS ESSENTIAL TO PROTECT THE SAFETY OF OTHER PERSONS; AND TO HAVE REASONABLE ACCESS TO A TELEPHONE.

127). DEFENDANT ERICKSEN KNOWS EMERGENCY DETENTION OF PERSONS WITH MENTAL DISORDERS PROCEDURE AND FAILED TO FOLLOW THEM, OFFICER ERICKSEN HAD NO CREDIBLE OR RELIABLE PERSON(S) WHO PROVIDED INFORMATION TO SPEAK WITH. AFTER HE INVESTIGATED AND EVALUATED THE ALLEGED SPECIFIC FACTS, HE KNEW THERE WAS NOTHING TO SUPPORT PLAINTIFF BEING DETAINED AND COMMITTED TO SHMC.

128). DEFENDANT ERICKSEN SUBJECTED PLAINTIFF TO OFFENSIVE TOUCHING, HANDCUFFING, AND RESTRAINT CUFFING WHILE HE WAS UNLAWFULLY DETAINING AND OR INCARCERATING PLAINTIFF.

For Legal Use Only

FOR LEGAL USE ONLY

# ✳ 9-26-2018, SACRED HEART DEFENDANTS ✳

129). ON 09-26-2018, PLAINTIFF WAS ADMITTED INTO SHMC AFTER MEDICAL CLEARANCE.

130). PLAINTIFF WAS ESCORTED INTO ER WITH SPD DEFENDANT OFFICER ERICKSEN AND TAKEN TO ROOM 12. DEFENDANT CAMPBELL WAS PRESENT ALONG WITH OTHER SECURITY AND NURSES.

131). DEFENDANT CAMPBELL ASKED PLAINTIFF TO CHANGE INTO BLUE HOSPITAL SCRUBS, SO HE COULD CONFISCATE HIS CLOTHES, CELL PHONE, AND OTHER BELONGINGS. PLAINTIFF WAS NOT CUFFED.

132). WHEN PLAINTIFF REFUSED, DEFENDANT ERICKSEN ASKED HIM TO CHANGE CLOTHES ALSO AND PLAINTIFF REFUSED BY SAYING, " I DON'T NEED TO CHANGE MY CLOTHES, WHY AM I HERE ANYWAYS?"

For Legal Use Only

133). DEFENDANT CAMPBELL AND UPON INFORMATION AND BELIEF JOHN DOE REVIS TOLD PLAINTIFF THAT HE WOULD BE PLACED IN RESTRAINTS IF HE DIDNT COMPLY. PLAINTIFF POLITELY REFUSED TO DRESS IN HOSPITAL CLOTHES

FOR LEGAL USE ONLY

134). DEFENDANTS CAMPBELL, KEVIS, AND ERICKSON)
ALONG WITH NURSES, AGRESSIVELY GRABBED
PLAINTIFF AND ASSAULTED HIM BY USING
NERVE PRESSURE POINTS ON HIS HEAD WITH ELBOWS,
APPLYIN PRESSURE UPON HIS FINGERS, LEGS, AND
ANKLES TO CAUSE EXTREME PAIN, WHILE FORCIBLY
PLACING PLAINTIF IN FOUR POINT RESTRAINTS.

135). HOSPITAL DEFENDANTS SUBJECTED PLAINTIFF
TO OFFENSIVE TOUCHING, HAND/FOOT CUFFING
WHILE UNLAWFULLY DETAINING/INCARCERATION HIM
FOR EVALUATION.

136). HOSPITAL DEFENDANTS KNEW THE RIGHTS OF
INVOLUNTARILY DETAINED PERSONS AS DESCRIBED IN
THE REVISED CODES OF WASHINGTON (RCW'S), AND
KNEW THAT PLAINTIFF HAD THE RIGHT TO WEAR
HIS OWN CLOTHING AND TO KEEP AND USE HIS
PERSONAL POSSESSIONS, EXCEPT WHEN DEPRIVATION OF
SAME IS ESSENTIAL TO PROTECT THE SAFETY OF
OTHER PERSONS; AND TO HAVE REASONABLE ACCESS
TO A TELEPHONE.

For Legal Use Only

137). HOSPITAL DEFENDANTS KNOW THE EMERGENCY
DETENTION OF PERSONS WITH MENTAL DISORDERS
PROCEDURES AND FAILED TO FOLLOW THEM BY NOT
HAVING PLAINTIFF (AFTER HIS CLEARANCE) EXAMINED
BY A MENTAL HEALTH PROFESSIONAL WITHIN

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

THREE HOURS AFTER HIS ARRIVAL AND HELD PLAINTIFF FOR A PERIOD LONGER THAN TWELVE HOURS. PLAINTIFF DID NOT MEET THE DETENTION CRITERIA AND NO PETITION FOR DETENTION WAS ISSUED.

138). AFTER PLAINTIFF WAS RESTRAINED, DEFENDANT OFFICER ERICKSON LEFT HOSPITAL. HOSPITAL DEFENDANTS UNCUFFED PLAINTIFF 90 TO 120 MINUTES LATER AND MOVED HIM TO A LOCKED/ SECURE ROOM WITH A FLOOR MOUNTED WOODEN BUNK WITH A MATTRESS AND A VIDEO BUBBLE.

139). HOSPITAL DEFENDANTS WOULD NOT ALLOW PLAINTIFF TO USE THE FACILITIES RESTROOMS, BUT INSTEAD HAD GIVEN HIM A PAPER URINAL TO PEE OR POOP IN.

140). PLAINTIFF ASKED (THE PUDGY NURSE WITH THE BLONDISH BROWN HAIR WITH THE EMOTIONLESS EYES WHO ACTED IN THE SAME MANNER AS NURSE RATCHETT FROM THE MOVIE " ONE WHO FLEW OVER THE CUCKOOS NEST) JANE DOE NURSE 1, FOR A COPY OF THE DOCUMENT THAT EXPLAINS WHY HE'S BEING HELD IN MENTAL HEALTH UNIT. JANE DOE 1 TOLD HIM TO "SHUT UP AND SIT DOWN", TOTALLY IGNORING HIS REQUEST.

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

141). UPON INFORMATION AND BELIEF, PLAINTIFF WAS IN ROOM 52, WHICH IS A LOCKED UNIT SIMILAR TO A JAIL CELL. THE ONLY WAY HE COULD GET OUT OF ROOM IS IF HOSPITAL DEFENDANTS OPENED DOOR. THE DOOR HAS SHUTTER BLINDS.

142). PLAINTIFF WAS NOT RUDE, DISRUPTIVE, OR OBNOXIOUS AND HE HAS A RIGHT TO FREE SPEECH.

143). PLAINTIFF HAS A RIGHT TO KNOW WHY HE WAS BEING HELD AT THE ER MENTAL HEALTH UNIT.

144). PLAINTIFF WAS NOT A DANGER TO OTHERS WHILE HE WAS BEHIND LOCKED DOOR.

145). PLAINTIFF WAS NOT A DANGER TO HIMSELF AND DID NOT HARM HIMSELF WHILE IN ROOM 52.

For Legal Use Only

146). THE VIDEO IN PLAINTIFFS ROOM IS TO OBSERVE HIM AND RECORDS TO PROTECT HIM IN CASE HIS RIGHTS ARE VIOLATED BY HOSPITAL STAFF.

FOR LEGAL USE ONLY

147). PLAINTIFF CONTINUED TO ASK JANE DOE 1 WHY HE WAS BEING HELD AND SHE CONTINUED TO IGNORE HIM. PLAINTIFF THEN ASKED FOR A COMPLAINT FORM AND TO SPEAK WITH SOMEONE FROM ADMINISTRATION SO HE COULD REPORT WHAT HAPPEND TO HIM AT HOLY FAMILY. PLAINTIFF WAS EXPLAINING HIS EXPERIENCE THROUGH HIS DOOR SO NURSES AND PATIENTS COULD HEAR HIM.

148). JANE DOE NURSE 1 AND JOHN DOE NURSE 2 (TALL GUY WITH LONG DARK HAIR IN PONYTAIL AND GLASSES) CAME TO PLAINTIFF'S WINDOW AND TOLD HIM TO SHUT UP AND IF HE KEPT TALKING ABOUT THE HOLY FAMILY INCIDENT HE'll BE SCREWED.

149). PLAINTIFF CONTINUED TO TALK ABOUT HOLY FAMILY AND HOW THEY VIOLATED HIS 14TH AMENDMENT RIGHTS BY FORCEFULLY INJECTING HIM WITH MEDICATIONS WHEN HE WAS NOT A DANGER TO HIMSELF OR OTHERS.

For Legal Use Only

150). DEFENDANT CAMPBELL, BOWES, REVIS, AND JOHN DOE 2 OPEN PLAINTIFF'S DOOR AND ASKED HIM TO SIT ON BED.

151). PLAINTIFF COMPLIED AND SAT ON BED. HE DID NOT ATTACK OR THREATEN STAFF.

FOR LEGAL USE ONLY

152). DEFENDANTS THEN GRABED PLAINTIFF AND TOLD HIM THAT HE WAS GOING TO GET AN INJECTION PLAINTIFF TOLD THEM THAT HE DIDNT WANT NO MEDICATION AND TO CHECK HIS ALLERGIC LIST.

153). DEFENDANTS STARTED USING THE ABUSIVE TECHNIQUES DESCRIBED IN PARAGRAPH 134. PLAINTIFF NATUALLY RESISTED PASSIVELY BY LOUDLY TELLING THEM "NO", BY TENSING HIS BODY AND REFUSING TO ALLOW THEM ACCESS TO HIS BUTTOCKS.

154). JANE DOE 1 AND DOCTOR ENTERED PLAINTIFFS ROOM AND INJECTED PLAINTIFF WITH ANTI PSYCHOTIC MEDICATIONS. PLAINTIFF TOLD THEM HE WOULD SUE THEM.

155). DEFENDANT BOWES OR CAMPBELL WERE ON THE LEFT AND RIGHT SIDE OF PLAINTIFF AND WAS GRINDING THEIR ELBOW/FOREARM INTO HIS TEMPLE FORCEFULLY TO CAUSE EXTREME PAIN.

For Legal Use Only

156). UPON INFORMATION AND BELIEF, JOHN DOES J, K, L, M, AND OR M WERE ALSO PRESENT.

157). HOSPITAL DEFENDANT LEFT ROOM 52 WITH OUT INCIDENT AND CLOSED BLINDS TO THE ROOM SO PLAINTIFF COULDNT SEE ANYTHING OTHER THAN FOUR WALLS.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

158). ON 9-17-18, 9-26-18, AND 9-30-18, THERE WAS NO ATTEMPT BY ANY OF THE HOSPITAL DEFENDANTS TO OBTAIN THE INFORMED CONSENT OF PLAINTIFF PRIOR TO THE ADMINISTRATION OF ANTIPSYCHOTIC MEDICATION

159). PLAINTIFF DID NOT PRESENT AN IMMINENT LIKELIHOOD TO CAUSE SERIOUS HARM AND HAD A RIGHT TO REFUSE THE MEDICATIONS.

160). PLAINTIFF HAD HISTORY OF VISITING SHMC REQUESTING HELP FOR DRUG ADDICTION AND WAS NEVER RUDE, DISRUPTIVE OR ASSAULTIVE TOWARDS ANY HOSPITAL STAFF.

161). ON PRIOR VISITS, HOSPITAL STAFF WOULD HAVE PLAINTIFF WAITING IN LOBBY 6-10 HOURS, AT TIMES WAITING TO BE SEEN.

For Legal Use Only

162). HOSPITAL DEFENDANTS DID NOT PROVIDE PLAINTIFF INFORMATION SUFFICIENT TO FORM THE BASIS FOR A REASONED DECISION, AND TO BE ABLE TO MAKE SUCH A DECISION, TO KNOW WHETHER ANY REASONABLE ALTERNATIVES TO PSYCHOTROPIC MEDICATION EXISTS.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

163). ALL PROVIDENCE HOSPITAL DEFENDANTS DID NOT ADVISE THE PLAINTIFF, IN WRITING, OF THE SIDE EFFECTS, RISES, AND BENEFITS OF THE INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC MEDICATION, WHICH IS NECESSARY TO GUARD A PATIENT'S / RESPONDENT'S FUNDAMENTAL LIBERTY INTEREST IN REFUSING INVASIVE MEDICATION.

164). PLAINTIFF WAS NOT DETERIORATING OR SUFFERING FROM A MENTAL ILLNESS AND HOSPITAL DEFENDANTS CAN NOT PROVIDE ANY INSIGHT INTO WHY THEY VIOLATED PROCEDURE.

165). PLAINTIFF INCORPORATES PARAGRAPHS 82 THROUGH 98 AS FULLY STATED HEREIN.

166). AFTER HOSPITAL DEFENDANTS LEFT THE ROOM AND LOCKED IT. PLAINTIFF WENT BACK TO THE DOOR AND STARTED TALKING AGAIN IN A CALM VOICE. HE NOTIFIED DEFENDANTS THAT THEY WERE VIOLATING PATIENTS RIGHTS REGULARLY AND THAT HE WAS GOING TO FILE COMPLAINTS AGAINST HOLY FAMILY DEFENDANTS AND SHMC DEFENDANTS FOR VIOLATING PLAINTIFF'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.

167). JANE DOE 1, JOHN DOE 2 CAME BACK TO PLAINTIFFS ROOM AND TOLD HIM TO SHUT AND

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

LAY DOWN, PLAINTIFF POLITELY REFUSED BY STATING HE HAS A RIGHT TO FREE SPEECH AND CAN SAY AND DO WHAT HE WANTS BEHIND LOCKED DOOR BECAUSE HE WAS NOT A THREAT TO HIMSELF.

168). PLAINTIFF ADVISED DEFENDANT CAMPBELL, BOWES, JANE DOE 1, JOHN DOE 2, AND OTHER STAFF AS THEY CAME AND WENT FROM HIS DOOR WINDOW THAT HE WAS GOING TO FILE A CIVIL LAWSUIT AGAINST THEM FOR THE HOLY FAMILY INCIDENT AND CURRENT INCIDENT.

169). UPON INFORMATION AND BELIEF 30 - 60 MINUTES AFTER THE FIRST ASSAULT AND FORCED INJECTION ALL OF THE SHMC HOSPITAL DEFENDANTS UNLOCKED PLAINTIFF'S ROOM AND ENTERED IT. DEFENDANTS GRABBED PLAINTIFF FORCEFULLY AND ASSAULTED HIM WHILE INJECTING HIM A SECOND TIME WITH ANTI-PSYCHOTIC MEDI-CATIONS.

For Legal Use Only

170). DEFENDANT CAMPBELL, BOWES, OR ANOTHER SECURITY OFFICER SLAMMED THE BACK OF PLAINTIFF'S HEAD AGAINST THE WOODEN EDGE OF BED FRAME KNOCKING HIM OUT AND CAUSING HIM TO HAVE A UNCONTROLLED SEIZURE.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

171). HOSPITAL DEFENDANTS HAD LEFT THE ROOM AND DID NOT PROVIDE ANY MEDICAL ATTENTION TO PLAINTIFF OR CALL ANYONE TO HELP HIM.

172). PLAINTIFF CRIED HIMSELF TO SLEEP AND DIDNT GET OUT OF BED AFTER ASSAULT.

173). HOSPITAL DEFENDANTS SUBJECTED PLAINTIFF TO OFFENSIVE TOUCHING AND UNWANTED MEDICATIONS.

174). HOSPITAL DEFENDANTS RETALIATED AGAINST PLAINTIFF FOR EXPRESSING HIS RIGHTS TO DUE PROCESS, THEY ANTICIPATED LITIGATION

175). THE NEXT MORNING JOHN DOE PSYCHOLOGIST CAME TO PLAINTIFF'S ROOM. PLAINTIFF EXPLAINED THE EVENTS ABOVE TO HIM. DEFENDANT RELEASED PLAINTIFF IMMEDIATELY.

For Legal Use Only

176). PLAINTIFF ASKED JOHN DOE PSYCHOLOGIST FOR COMPLAINT FORM AND HE IGNORED HIM.

177). PLAINTIFF WAS ESCORTED OUT OF HOSPITAL WHEN HE TRIED TO SPEAK WITH ADMINISTRATION TO GET COMPLAINT FORM.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

178). HOSPITAL DEFENDANTS ANTICIPATED A COMPLAINT TO BE FILED BY PLAINTIFF FOR FORCIBLY ADMINISTRATING MEDICATIONS INTO HIS BODY.

179). HOSPITAL DEFENDANTS ANTICIPATED A COMPLAINT BY PLAINTIFF FOR ASSAULT AND RETALIATION.

180). HOSPITAL DEFENDANTS PLACED A LITIGATION HOLD ON PLAINTIFFS ROOM VIDEO RECORDING TO JUSTIFY THEIR ACTIONS.

181). HOSPITAL DEFENDANTS ALLOWED VIDEO TO DELETE OR INTENTIONALLY ERASED VIDEO IN ANTICIPATION OF CRIMINAL OR CIVIL LITIGATION.

182). HOSPITAL DEFENDANTS WERE DELIBERATELY INDIFFERENT TO THE PLAINTIFF'S MEDICAL NEEDS AFTER ASSAULT.

For Legal Use Only

183). HOSPITAL DEFENDANTS CONSPIRED TO PROTECT EACHOTHER AND AVOID MAKING ANY WITNESS STATEMENTS, WRITING REPORTS, OR REPORTING INCIDENTS.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

# *** SACRED HEART DEFENDANTS ***

184). ON 09-30-2018 PLAINTIFF ARRIVED TO SHMC BETWEEN 2AM AND 3AM TO PICK UP A COMPLAINT FORM AND MEET UP WITH A FRIEND WHO WAS IN THE AREA.

185). PLAINTIFF WAS DROPPED OFF BY SPOKANE CAB INFRONT OF EMERGENCY ROOM DOORS WHERE HE ENTERED AND ASKED RECEPTIONIST FOR A COMPLAINT FORM. DEFENDANT BOWES WAS SITTING IN THE RECEPTIONIST COVE ALSO.

186). BEFORE RECEPTIONIST COULD RESPOND, DEFENDANT BOWES TOLD PLAINTIFF HE "COULDN'T HAVE ONE" AND "TO COME BACK DURING BUISNESS HOURS". PLAINTIFF TOLD BOWES THAT HE REMEMBERS HIM FROM THE 09-26-2018 INCIDENT AND ASSAULT, THAT HE WANTS TO FILE A COMPLAINT ASAP. DEFENDANT BOWES GETS UP AND GOES INTO SECURITY OFFICE.

For Legal Use Only

187). PLAINTIFF ASKS RECEPTIONIST TO USE COURTESY PHONE TO FIND OUT WHERE OR HOW FARAWAY HIS FRIEND WAS. SECURITY TURNED PHONE OFF.

188). SECURITY CAN TURN HOUSE OR CAB PHONES OFF AND ON FROM INSIDE OFFICE.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

189). PLAINTIFF LEFT HOSPITAL TO AVOID CONFRONTATION WITH SECURITY AND TO WAIT FOR HIS FRIEND BY STREET. SECURITY WERE STILL INSIDE OFFICE AS PLAINTIFF WALKED OUT DOORS. PLAINTIFF WAS INSIDE HOSPITAL ER / WAITING ROOM 3-4 MINUTES.

190). AS PLAINTIFF WAS WALKING THROUGH HOSPITAL PARKING LOT ONTO 8TH AVE SIDEWALK, SECURITY DEFENDANT(S) BOWES, CAMPBELL, [UPON INFORMATION AND BELIEF...] REVIS, JOHN DOE K, JOHN DOE M, AND UNKNOWN JOHN DOE CAME RUNNING OUT OF ER AND CHILDRENS HOSPITALS ENTRANCES AND APPROCHED PLAINTIFF. SECURITY ARE ALL CAUCASIAN / WHITE MALES.

191). DEFENDANTS BEGAN TO TAUNT PLAINTIFF WITH DISRESPECTFUL AND RACIST WORDS IN AN ATTEMPT TO PROVOKE A CONFLICT WITH HIM.

192). PLAINTIFF REMAINED CALM WHILE ADVISING DEFENDANT(S) THAT HE HAS A RIGHT TO FILE A COMPLAINT AND TO PURSUE CRIMINAL AND CIVIL LITIGATION AGAINST THEM WITHOUT BEING HARASSED. HE ADVISED DEFENDANTS NOT TO DELETE VIDEO WHEN HE STAYED ON 09-26-2018. AT SHMC.

193). PLAINTIFF ADVISED DEFENDANTS THAT HE WILL BE BACK MONDAY 10/01/2018 TO FILE COMPLAINT FOR HOLY FAMILY INCIDENT ALONG WITH HARASSMENT COMPLAINT.

For Legal Use Only

FOR LEGAL USE ONLY

194). PLAINTIFF SEEN HIS FRIEND CROSSING STREET ON '8TH AVE AND BERNARD' WALKING EAST. PLAINTIFF STARTED TO WALK WEST TOWARD HER, BUT WAS BLOCKED BY BOWES AND CAMPBELL, WHO BEGAN TO GET EXTREMELY HOSTILE, TELLING HIM TO, "GET WAY FROM HOSPITAL PROPERTY", PUTTING ON THEIR GLOVES, BALLING UP THEIR FISTS IN ACT OF AGRESSION, WHILE TELLING PLAINTIFF TO WALK EAST ON 8TH AVE.

195). PLAINTIFF ASKED SUPERVISOR (REVIS) WHY HE WAS ALLOWING DEFENDANTS TO INTIMIDATE HIM. SUPERVISOR SAID, "WE DON'T WANT YOUR KIND AROUND HERE BUM, SO GET OFF OUR SIDE WALK, EAST," WHILE POINTING THAT DIRECTION.

196). PLAINTIFF WALKED OFF SIDEWALK INTO STREET AND STARTED WALKING EAST TO AVOID CONFRONTATION.

197). SUPERVISOR THEN SAID, "HEY BUM, YOU SHOULD QUIT USING METH THEN YOU WOULDN'T KEEP FINDING TROUBLE".

For Legal Use Only

198). AS SUPERVISOR IS TALKING THE SECURITY CAR PULLS UP ALONG SIDE OF DEFENDANTS AND JOHN DOE.) JUMPS OUT OF CAR AND IMMEDIATELY APPROCHES PLAINTIFF WITH HIS FIST BALLED UP AND SAID "KEEP WALKING BITCH". PLAINTIFF WAS WALKING AWAY WHEN JOHN DOE.) AND DEFENDANTS HAD A QUICK CHAT AMONGST THEMSELVES.

FOR LEGAL USE ONLY

199). DEFENDANTS CONTACTED JOHN DOE J PRIOR TO LEAVING HOSPITAL AND ADVISED HIM THAT PLAINTIFF RETURNED TO MAKE COMPLAINT.

200). JOHN DOE J WAS ONE OF THE DEFENDANTS INVOLVED WITH ASSAULTING PLAINTIFF ON 09-26-2018.

201). UPON INFORMATION AND BELIEF, ALL SECURITY DEFENDANTS WERE BRIEFED OR INVOLVED WITH 09-17-2018 INCIDENT AT HOLY FAMILY AND WERE TRANSFERED TO SACRED HEART AFTERWARDS. DEFENDANTS WORKING GRAVEYARD ON 09-30-2018 WERE INVOLVED IN (OR WORKING DURING) 09-26-'18 INCIDENT.

202). UPON INFORMATION AND BELIEF, SECURITY DEFENDANTS HAVE COMPLAINTS OF BEING ASSAULTIVE OR ABUSIVE TOWARDS TRANSIENTS, VISITORS, OR PATIENTS, AND VIDEO EVIDENCE OF INCIDENTS WERE DELETED OR SYSTEM WAS MALFUNCTIONING AT TIME.

For Legal Use Only

203). UPON INFORMATION AND BELIEF, SECURITY DEFENDANTS USE EACHOTHER AS EYE WITNESSES TO CORROBORATE INCIDENT REPORTS OF ASSAULTS AND ARRESTS WHEN SECURITY CAMERAS MALFUNCTION OR VIDEOS ARENT AVAILABLE.

204). UPON INFORMATION AND BELIEF, SECURITY

FOR LEGAL USE ONLY

DEFENDANTS HAVE USED TASERS DURING OTHER INCIDENTS EXCESSIVELY AND OR MALICIOUSLY PROSECUTED TRANSIENTS, VISITORS, OR PATIENTS WHILE DENYING THEM VIDEO EVIDENCE THAT WOULD EXONERATE THEM AND CONTRADICT INCIDENT REPORTS.

205). SUPERVISOR (REVIS) TOLD JOHN DOE J AND K TO, "ENJOY", AS HE, BOWES, CAMPBELL, AND OTHER DOES TURNED AND WALKED BACK TO SECURITY OFFICE. SUPERVISOR INSTRUCTED DOE J AND K TO ASSAULT PLAINTIFF.

206). PLAINTIFF STARTED SLOW WALKING EAST SO HIS FRIEND WOULD SEE HIM AND CATCH UP. JOHN DOE K GOT INTO DRIVERS SIDE OF SECURITY CAR AND TURNED ON SECURITY FLOOD LIGHT ON HIM WHILE SLOWLY DRIVING BEHIND HIM. AS JOHN DOE J PULLED HIS FLASH LIGHT OUT AND STARTED WALKING TOWARD PLAINTIFF WITH LIGHT ON HIM.

207). PLAINTIFF SEEN HIS FRIEND CROSSING FROM NORTHSIDE OF STREET TO SOUTH SIDE WALK, SO HE GOT ON SOUTH SIDE WALK GOING EAST.

208). JOHN DOE J GOT BACK INTO PASSENGER SIDE OF CAR

209). THE OTHER SECURITY DEFENDANTS HAD ENTERED HOSPITAL AND WERE OUT OF SIGHT.

For Legal Use Only

FOR LEGAL USE ONLY

210). PLAINTIFF STOPPED TO TIE HIS SHOE THEN TURNED WEST TO WALK TOWARDS HIS FRIEND WHEN JOHN DOE J JUMPED OUT OF CAR WITH HIS BATON ALREADY EXTENDED IN HIS RIGHT HAND ALONG HIS LEG, WITH HIS FLASHLIGHT IN HIS LEFT HAND FLASHING IT IN PLAINTIFF'S FACE TRYING TO BLIND HIM. AS HE APPROCHED HIM.

211). PLAINTIFF TOLD JOHN DOE J AND K TO "LEAVE HIM ALONE". DOE J TOLD HIM TO "WALK EAST". SECURITY CAR WAS ALSO BLINDING PLAINTIFF WITH LIGHT.

212). AS PLAINTIFF WALKED BY TREE TO AVOID THE BLINDING LIGHT, HE WAS ABLE TO AVOID JOHN DOE J ATTEMPTED ASSAULT WITH BATON, THEN HE TOOK OFF RUNNING NORTH ACROSS STREET IN A SPRINT.

213). JOHN DOE K ATTEMPTED TO HIT PLAINTIFF WITH CAR AS HE RAN OUT INTO STREET.

For Legal Use Only

214). JOHN DOE K SPED ACROSS STREET TO CHASE PLAINTIFF BUT HE JUMPED OVER WALL TO AVOID HIS ASSAULT WITH CAR AND RAN THROUGH ANOTHER PARKING LOT GOING UPHILL.

215) JOHN DOE J RAN BEHIND PLAINTIFF WITH FLASH LIGHT AND BATON STILL EXTENDED IN RIGHT HAND.

FOR LEGAL USE ONLY

216). PLAINTIFF RAN 70 TO 80 YARDS BEFORE ARRIVING AT A 7 FOOT CHAIN LINK FENCE AND IMMEDIATELY LEAPED OVER IT LIKE A NINJA WARRIOR.

217). DEFENDANT J DIDNT HAVE THE STRENGTH TO COMPETE IN THE FENCE JUMPING COMPETITION AND COULDNT GO THROUGH GATE DOOR AT THAT MOMENT BECAUSE IT WAS LOCKED.

218). DEFENDANT K SPED OUT OF THE PARKING LOT ON TO SOUTH DIVISION ST HEADED NORTH TO THE 7TH AVE PARKING GARAGE BEHIND THE FENCE THAT PLAINTIFF JUMPED OVER.

For Legal Use Only

219). THE PARKING LOTS DEFENDANT J AND K CHASED DEFENDANT THROUGH, HAS VIDEO CAMERAS.

220). PLAINTIFF RAN THROUGH A BRUSH AND WOODED AREA DOWN HILL TOWARDS SOUTH DIVISION ST AND 7TH AVENUE INTERSECTION.

FOR LEGAL USE ONLY

PLAINTIFF TRIPPED OVER A LOG AND TUMBLED THROUGH SOME BRUSH WHERE HE LAID NEAR TO A MATURE PINE TREE, THAT HAS A TREE STAND AND STAIRS SPIRALING UP THE TRUNK.

221). DEFENDANT K DROVE THE SECURITY CAR UP TO THE FOURTH OR FIFTH LEVEL OF THE PARKING GARAGE AND FOCUSED HIS SEARCH LIGHT AROUND WOODED AREA IN ATTEMPT TO FIND PLAINTIFF IN THE BRUSH.

222). 5 TO 15 MINUTES HAD PASSED BEFORE PLAINTIFF WAS SURROUNDED BY SECURITY DEFENDANTS, WHO HAD SIDE WALKS BLOCKED ON 7TH AVE, 8TH AVE, AND SOUTH DIVISION ST.

223). DEFENDANT J AND UNKNOWN JOHN DOE CAME BACK TO THE FENCE THAT PLAINTIFF JUMPED OVER. DEFENDANTS OPENED THE GATE AND DEFENDANT J ENTERED WOODED BRUSH AREA WHILE JOHN DOE LOCKED AND GUARDED GATE, USING FLASH LIGHT ALSO TO SEARCH AREA TO THE EAST.

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

224). DEFENDANT J WALKED ALONG THE PATH PLAINTIFF TOOK DOWN THE HILL AFTER HE ENTERED GATE.

225). DEFENDANT J WAS ARMED WITH A BLACK GUN. HE JACKED A BULLET INTO TO THE CHAMBER OF THE AUTOMATIC WEAPON.

226). DEFENDANT J OWNS A GUN AND IS LICENSED TO CARRY.

227). DEFENDANT J AND SECURITY DEFENDANTS HAVE SPECIAL POLICE POWERS ASSOCIATED WITH THEIR EMPLOYMENT AS SECURITY OFFICERS (GUARDS.

228). DEFENDANT J WALKED THROUGH BRUSH IN SEARCH OF PLAINTIFF WITH HIS GUN IN RIGHT                    HAND AND FLASHLIGHT IN LEFT HAND. DEFENDANT WAS USING HIS FLASH LIGHT AS A BEAM FOR HIS GUN WITH HIS LEFT WRIST OVER HIS RIGHT WRIST.

For Legal Use Only

229). DEFENDANT J WALKED ABOVE AND BY PLAINTIFFS HEAD BY 3 FEET BUT COULDNT SEE HIM BECAUSE HE WAS

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

PARTLY BURIED FOILAGE AND HIS CLOTHES MATCHED THE FALL COLORS.

230). PLAINTIFF WAS SO SCARED THAT HE URINATED UPON HIMSELF.

231). UNKNOWN SECURITY DEFENDANT TOLD DEFENDANT J TO, "THROW THIS KNIFE BY HIM WHEN YOU GET HIM".

232). SECURITY DEFENDANTS CONSPIRED TO MURDER PLAINTIFF AND PLANT A WEAPON ON HIM TO JUSTIFY THE USE OF FORCE.

233). DEFENDANT K TOLD DEFENDANT J THAT HE COULDNT SEE PLAINTIFF AT ALL.

234). DEFENDANT J STATED TO OTHER SECURITY DEFENDANTS AFTER SEARCHING THE WOODED BRUSH AREA THAT," HE MUST HAVE GOTTEN ALL THE WAY THROUGH HERE".

235). ONE OF THE SECURITY DEFENDANTS MENTIONED "BRINGING A DOG" UP TO BRUSH AREA AS THEY WERE WALKING AWAY, ANOTHER ORDERED SOME OF THE DEFENDANTS TO STAND AT CORNER'S

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

236). SECURITY DEFENDANTS SEARCHED 30-45 MINUTES BEFORE POSTING DEFENDANTS ON CORNERS.

237). DEFENDANT K LEFT HIS POST ON THE PARKING GARAGE AND STARTED CANVASING THE SURROUNDING NEIGHBORHOOD WITH DEFENDANT U IN SECURITY CAR.

238). PLAINTIFF LAID WHERE HE WAS UNTIL ABOUT 4:15 AM. A HOUR TO A HOUR AND A HALF AFTER SECURITY DEFENDANTS GAVE UP SEARCH. DEFENDANT(S) BROUGHT A DOG WHICH WAS SEARCHING THE WOODED BRUSH AREA EAST OF PLAINTIFF ON BACK SIDE OF PARKING GARAGE.

239). UPON INFORMATION AND BELIEF SECURITY DEFENDANTS AND HOSPITAL DEFENDANT(S) HAD CONSPIRED TO RETALIATE AGAINST PLAINTIFF FOR WANTING TO FILE COMPLAINTS, THREATENING THEIR JOBS, LIVELIHOODS, WHICH INCLUDE CIVIL AND CRIMINAL PENALTIES.

240). UPON HEARING A DOG, PLAINTIFF GOT UP AND RAN THE 40 TO 60 FEET DOWNHILL TO SOUTH DIVISION ST. HE RAN ACROSS 7TH AVE AND NOTICED AS HE JUMPED OVER WALL

FOR LEGAL USE ONLY

TO THE PARK THAT THE SECURITY CAR WAS PARKED ON THE EAST SIDE OF 7TH AND SOUTH DIVISION ST AND A SECURITY OFFICER WAS STANDING IN THE ENTERANCE TO THE PARKING GARAGE ON WEST 7TH AVE OF THE MAIN HOSPITAL BUILDING. PLAINTIFF RAN WEST TOWARDS HEART INSTITUTE AT 122 W. 7TH AND SEEN ANOTHER SECURITY OFFICER AT THE 7TH AND BERNARD TURN AT TOP OF HILL.

241). PLAINTIFF ASKED JANE DOE SECURITY IF SHE WAS "A PART OF ALL THIS", AS SHE WAS SMOKING A CIGARETTE AND CALLING SOMEONE ON CELL PHONE.

242). PLAINTIFF IN FEAR FOR HIS LIFE TRIED TO ENTER HEART INSTITUTE TO CALL POLICE BUT IT WAS CLOSED. PLAINTIFF RAN OVER TO PARK AND GRABBED TWO ROCKS BECAUSE THEIR WAS TWO SEPERATE SLIDING DOORS. PLAINTIFF BROKE LOWER WINDOW AND STEPPED THROUGH. THE SECOND DOOR AUTOMATICLLY OPENED. PLAINTIFF TRIED PULLING GREEN FIRE ALARM BOX BUT IT WAS LOCKED. HE DID NOT SEE ANY PHONES, SO HE TOOK ELEVATOR TO FIFTH FLOOR WHERE SKY BRIDGE WAS AND IN HIS PANIC HE WENT

For Legal Use Only

FOR LEGAL USE ONLY

OUT WRONG DOORS AND GOT LOCKED OUT. HE THEN USED SECOND ROCK TO BUST OUT LOWER WINDOW TO GET BACK IN. THE SECOND SLIDING DOOR AUTOMATICLY OPENED. PLAINTIFF RAN ACROSS SKY BRIDGE TO A HALL-WAY WITH MULTIPAL DOORS, HE CHECKED A FEW DOORS AS HE RAN TO THE END OF THE HALL BUT THEY WERE LOCKED.

243). THE HEART INSTITUTES ADDRESS IS, 122 WEST 7TH (SEVENTH) AVENUE.

244). SACRED HEART MEDICAL CENTER'S ADDRESS IS, 101 WEST 8TH (EIGHTH) AVE.

245). THE EMERGENCY ROOM IS AT THE 101 W.8TH ENTERANCE, AND THE 'INLAND IMAGING X-RASY COVE' IS FIVE FLOORS ABOVE AND MORE THAN 150 FEET FROM SKY BRIDGE TO 122 W. 7TH.

246). THE INLAND IMAGING X-RAY COVE CAN NOT BE SEEN FROM THE SKY BRIDE AND IS NOT CONNECTED TO THE SAME HALLWAY AS THE SKY BRIDGE.

247). DEFENDANT CAMPBELL AND BOWES DID NOT CONFRONT OR ENGAGE IN ANY ACTIVITY WITH PLAINTIFF ON EITHER SIDE OF SKY BRIDGE.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

248). DEFENDANT CAMPBELL AND BOWES DID NOT OBSERVE PLAINTIFF IN HEART INSTITUTE OR SKY BRIDGE HALLWAY LEADING TO THE BACK ENTERANCE OF INLAND IMAGING X-RAY FACILITY, OR BATHROOM DOORWAYS LEADING TO X-RAY.

249). PLAINTIFF RAN SOUTH TO END OF THE SKY BRIDGE HALLWAY INTO THE SHMC. UPON INFORMATION AND BELIEF, PLAINTIFF ENTERED THE LAST DOOR TO HIS RIGHT WHICH HAD A BATHROOM TO HIS LEFT AND ANOTHER DOOR THAT LEAD TO A LINEN CLOSET AND X-RAY SHEILD. PLAINTIFF WENT THROUGH ANOTHER DOOR AND WAS IN THE X-RAY FACILITY ROOM ITS SELF AND WENT LEFT, GOING SOUTH INTO ANOTHER HALLWAY, CLOSING DOORS BEHIND HIMSELF.

✳ DEFENDANTS DEXTER, STACEY, BURDA ✳

For Legal Use Only

250). PLAINTIFF THEN RAN INTO X-RAY COVE WHERE HE MET DEFENDANTS DEXTER AND BURDA. DEFENDANT DEXTER WAS SEATED AT DESK AND ASKED PLAINTIFF IF HE WAS LOST AND WHERE HE WAS HEADED. HE STATED TO HER THAT " THE SECURITY OFFICERS HAD GUNS AND WERE TRYING TO KILL HIM AND

FOR LEGAL USE ONLY

THEY HAD BEEN CHASING HIM", THAT, " HE HAD BROKEN WINDOW TO GET IN TO USE THE PHONE TO CALL POLICE AND THAT HE WAS SCARED".

251). PLAINTIFF IMMEDIATELY PICKED UP PHONE AND DIALED 9 (TO GET A OUTSIDE LINE) THEN 911. PLAINTIFF EXPLAINED THE SITUATION TO 911 COMMUNICATIONS IN THE SAME MANNER THAT HE EXPLAINED IT TO DEFENDANT DEXTER AND BURDA.

252). DEFENDANT DEXTER CALLED DEFENDANT STACEY AND ASKED HIM TO COME BACK TO THE X-RAY COVE AND TO BRING SECURITY, WHILE PLAINTIFF WAS ON THE PHONE WITH 911 COMMUNICATIONS.

253). PLAINTIFF ASKED DEFENDANT DEXTER WHY SHE CALLED SECURITY ~~AFTER~~ TELLING HER THEY WERE CHASING HIM ~~THROUGH THE WOODS AND~~ HE CALLED POLICE ~~ABOUT CHASE THROUGH THE WOODS~~.

254). DEFENDANT DEXTER THEN TOLD PLAINTIFF TO CALM DOWN, THAT HE WAS IN A SAFE PLACE, AND THAT HELP WAS ON THE WAY. SHE INVITED PLAINTIFF TO SIT IN ONE OF THE CHAIRS AND

FOR LEGAL USE ONLY

THEN TOLD DEFENDANT BURDA TO CALL SECURITY ANYWAYS.

255). PLAINTIFF WAS NOT RUDE OR HOSTILE TOWARDS DEFENDANT(S) DEXTER AND BURDA.

256). PLAINTIFF'S EXPRESSIONS AND BODY LANGUAGE ALONG WITH WHAT HE SAID TO DEFENDANTS CONFIRMED TO DEFENDANT DEXTER THAT HE WAS SCARED AND FEARFUL.

257). PLAINTIFF POLITELY WALKED BY DEFENDANT DEXTER BEFORE RUNNING OUT OF X-RAY COVE.

258). DEFENDANT DEXTER IMMEDIATELY FOLLOWED PLAINTIFF AS HE RAN LEFT INTO HALLWAY TO FIRE ESCAPE / STAIRS THAT LEAD DOWN TO THE EMERGENCY ROOM.

For Legal Use Only

259). PLAINTIFF ENTERED STAIRWELL BUT TURNED AROUND AND TOLD DEFENDANT DEXTER THAT "SECURITY WERE COMING UP STAIRS", AND THAT "HE NEEDS TO GET TO A VIDEO BUBBLE" BECAUSE THEY ARE GOING TO ASSAULT OR KILL HIM".

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

260). DEFENDANT DEXTER BELIEVED THAT SECURITY WOULD NOT ASSAULT PLAINTIFF ALTHOUGH HE WAS SCARED. SHE THEN ASKED PLAINTIFF IN A CONCERNED AND CALM VOICE TO "CALM DOWN" AND SAID "SHE WAS THEIR TO HELP HIM", AS PLAINTIFF WALKED PAST HER BEFORE RUNNING TOWARDS THE VIDEO CAMERA BUBBLE ON THE NORTH SIDE OF HALLWAY.

261). DEFENDANT DEXTER IMMEDIATELY FOLLOWED PLAINTIFF BY FOUR TO FIVE FEET. PLAINTIFF DID NOT THREATEN ANYONE.

262). DEFENDANT DEXTER WAS IN SHOCK AND FELT HELPLESS IN AIDING PLAINTIFF FROM THE BEATING AND TASING SHE HAD TO WITNESS WHEN DEFENDANT(S) CAMPBELL, BOWES REVIS, JOHN DOE K AND M ATTACKED PLAINTIFF.

263). PRIOR TO THE ASSAULT BY SECURITY DEFENDANTS. DEFENDANT STACEY WAS WITH DEFENDANT CAMPBELL RUNNING DOWN HALL TOWARDS THE X-RAY COVE IN WHICH THERES A BLIND SPOT THAT DIVIDES THE FIFTH FLOOR HALLWAY NEAR OR AT THE WOMENS LOCKER ROOM.

For Legal Use Only

FOR LEGAL USE ONLY

264). DEFENDANTS STALCY AND DEXTER WITNESSED PLAINTIFF AND DEFENDANT CAMPBELL RUNNING INTO EACHOTHER THERE.

265). DEFENDANTS STALCY DID NOT SEE PLAINTIFF OR DEFENDANT DEXTER PRIOR TO SECURITY OFFICER AND PLAINTIFF MEETING AT THAT BLIND SPOT AT MID POINT OF HALLWAY.

266). DEFENDANT DEXTER DID NOT SEE SECURITY OR DEFENDANT STALCY PRIOR TO SECURITY OFFICER AND PLAINTIFF MEETING AT THAT BLIND SPOT AT MID POINT OF HALLWAY.

267). DEFENDANTS DEXTER AND STALCY DID NOT HEAR PLAINTIFF SAY ANYTHING TO SECURITY DEFENDANT PRIOR TO HIM BEING PUNCHED AND TACKLED TO THE FLOOR ABOVE VIDEO CAMERA.

For Legal Use Only

268). DEFENDANTS STALCY TRIED TO HELP DEFENDANT CAMPBELL ARREST PLAINTIFF UNTIL HE REALIZED PLAINTIFF WAS BEING ASSAULTED.

269). DEFENDANT STALCY AND DEXTER WATCHED PLAINTIFF'S ARMS AND SHOULDERS GET TWISTED IN AWKWARD POSITIONS WHILE DEFENDANT

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

CAMPBELL YELLED, "STOP RESISTING" OVER AND OVER AGAIN WHILE HE WAS PUNCHING PLAINTIFF IN THE BACK AND SIDE OF HEAD.

270). DEFENDANT STALCY AND DEXTER HEARD PLAINTIFF YELLING OUT IN PAIN WHILE TELLING SECURITY DEFENDANT TO "STOP ASSAULTING HIM" AND "THAT HE'S NOT RESISTING."

271). DEFENDANT STALCY AND DEXTER WITNESSED SECURITY DEFENDANT ON PLAINTIFFS BACK WHILE PLAINTIFF WAS TRYING TO SPREAD OUT TO PLACE HIS HAND BEHIND HIS BACK WHILE BEING ASSAULTED AT THE SAME TIME.

272). DEFENDANTS STALCY AND DEXTER WERE IN SHOCK AT WHAT THEY WERE WITNESSING.

273). DEFENDANTS STALCY AND DEXTER WITNESSED MORE SECURITY DEFENDANTS ARRIVE WHO IMMEDIATELY BEGAN TO ASSAULT PLAINTIFF ALSO BY KNEEING HIM IN HIS SPINE, PUNCHING HIM AND TWISTING HIS TESTICALS, AND TWISTING HIS OTHER ARM IN AWKWARD POSITIONS WHILE ALSO YELLING "STOP RESISTING."

For Legal Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

274). DEFENDANTS STALCY AND DEXTER HEARD PLAINTIFF SCREAM OUT IN AGONY AS HIS FINGER WAS DISLOCATED.

275). DEFENDANT STALCY AND DEXTER WITNESSED PLAINTIFF GETTING KNOCKED OUT OR PASSING OUT FROM PAIN.

276). DEFENDANT STALCY AND DEXTER WITNESSED SECURITY DEFENDANTS CONTINUE TO ASSAULT PLAINTIFF WHILE HE WAS UNCONCIOUS.

277). DEFENDANT BURDA HEARD PLAINTIFF'S PAINFUL SCREAMS AND RUSHED OUT OF X-RAY COVE TO THE COMOTION AND WITNESSED ASSAULT AND OR TASING OF PLAINTIFF WHILE HE WAS HAND CUFFED AND HELD DOWN.

For Legal Use Only

278). DEFENDANT STALCY AND BURDA WATCHED AS PLAINTIFF WAS BEING HANDCUFFED WHILE A SECURITY DEFENDANT HAD THEIR KNEES AND BODY WEIGHT ON THE BACK OF PLAINTIFFS LEGS, BACK, AND HEAD. PLAINTIFF WAS SAYING HE COULDNT BREATH.

FOR LEGAL USE ONLY

279). DEFENDANT STALCY, BURDA, AND DEXTER HEARD SECURITY DEFENDANT BOWES YELL "TASER, TASER, TASER, AS HE BEGAN TO DRIVE STUN PLAINTIFF MULTIPAL TIMES WITH HIS TASER

280). DEFENDANT STALCY, BURDA, AND DEXTER WITNESSED HOW SECURITY DEFENDANTS YANKED PLAINTIFFS ARMS UP IN AWKWARD MOTIONS WHILE HE WAS CUFFED TO CAUSE HIM TO SCREAM OUT IN PAIN AS THEY WERE PUTTING HIM IN A WHEEL CHAIR.

281). DEFENDANT DEXTER TRIED TO FOLLOW PLAINTIFF IN WHEELCHAIR WITH SECURITY DEFENDANTS TO PROTECT HIM WITH HER PRESENSE BUT SECURITY DEFENDANTS WOULD NOT LET HER BOARD THE ELEVATOR DOWN TO THE ER WITH THEM.

282). SOME TIME LATER, DEFENDANT DEXTER HAD CONCERN ABOUT PLAINTIFFS WELL BEING AND WENT TO ER TO CHECK ON HIM AND WITNESSED SECURITY DEFENDANTS IN THE ROOM WITH HIM, WITH THE CURTAIN CLOSED. PLAINTIFF WAS FOUR POINT RESTRAINED.

FOR LEGAL USE ONLY

283). DEFENDANT DEXTER STUCK AROUND ER AS LONG AS SHE COULD TO WITNESS THE EVENTS HAPPENING TO PLAINTIFF UNTIL POLICE ARRIVED.

284). DEFENDANT DEXTER, STALCY, AND BURDA DID NOT CALL 911 COMMUNICATIONS AND REPORT WHAT THEY WITNESSED.

DEFENDANT DEXTER, STALCY, AND BURDA FAILED TO MAKE AN ACCURATE REPORT TO ADMINISTRATION OR MAKE A REPORT OF INCIDENT TO THE DEPARTMENT OF HEALTH.

285). DEFENDANT STALCY, DEXTER, AND BURDA WERE THREATENED OR INTIMIDATED BY SECURITY DEFENDANTS IN REGARDS TO THE INCIDENT THEY WITNESSED ABOVE AND DID NOT GIVE ACCURATE STATEMENTS IN FEAR OF POSSIBLE RETALIATION BY SECURITY DEFENDANTS OR OTHER HOSPITAL STAFF.

For Legal Use Only

( IF SO, THEN PLAINTIFF UNDERSTANDS AND WILL DISMISS THEM FROM THIS CIVIL SUIT AFTER THEY PROVIDE THEIR ANSWER TO ALLEGATIONS ).

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

## ✷✷ SECURITY DEFENDANTS (DEF.) ✷✷

286). SECURITY DEF. GOT A CALL FROM X-RAY COVE ON 5TH FLOOR THAT NOTIFIED THEM OF A SCARED BLACK MAN NEEDING HELP.

287). UPON INFORMATION AND BELIEF, DEF. STACEY AND CAMPBELL RECEIVED A CALL FROM DEF. DEXTER TO COME BACK TO X-RAY COVE AND TO BRING SECURITY.

288). DEF. CAMPBELL WAS RUNNING TO X-RAY COVE WHEN HE RAN INTO PLAINTIFF COMING AROUND CORNER IN FRONT OF WOMENS LOCKER ROOM. HE IMMEDIATELY TACKED PLAINTIFF TO THE FLOOR.

289). DEF. CAMPBELL BEGAN TO IMMEDIATELY START PUNCHING PLAINTIFF IN THE BACK OF AND SIDE OF HIS HEAD/NECK AREAS, AVOIDING HIS FACE INTENTIONALLY.

For Legal Use Only

290). PLAINTIFF IMMEDIATELY LAYED ON HIS STOMACH AND ATTEMPTED TO PLACE HIS HANDS BEHIND HIS BACK TO BE HANDCUFFED WITHOUT RESISTANCE, DEF. CAMPBELL THEN STRADDLED PLAINTIFF BY PLACING HIS BODY WEIGHT AND KNEE ON HIS UPPER BACK/SPINE - NECK AREA, THEN BEGAN YANKING AND TWISTING HIS RIGHT ARM TO CAUSE PAIN,

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

TO CAUSE HIM TO YELL AND MOVE IN PAIN, TO INJURE.

291). DEF. CAMPBELL CONTINUED TO PUNCH AND ELBOW GRIND PLAINTIFF IN BACK/SIDE OF HEAD.

292). PLAINTIFF SCREAMED/YELLED OUT IN PAIN WHILE ASKING DEF. CAMPBELL TO STOP PUNCHING AND HURTING HIM AND THAT HE COULDN'T BREATH.

293). DEF. CAMPBELL BEGAN TO YELL " STOP RESISTING" MULTIPAL TIMES. PLAINTIFF SAID "I'M IS NOT RESISTING, YOUR KEEPING ME FROM CUFFING UP".

294). DEF. REVIS, BOWES, DOE K AND M ARRIVE AS BACK UP AND ALSO BEGAN TO ASSAULT KNEE PUNCH ON PLAINTIFF. DEF. BOWES GRABS PLAINTIFFS OTHER ARM AND YANKS, PULLS, AND TWISTS IT IN UNNATUAL POSITIONS UNTIL MUSCLE BEGINS TO TEAR IN CHEST AND ROTOR CUFFS.

295). PLAINTIFF IS YELLING AND SCREAMING IN AGONY.

296). DEF. K IS PUNCH, GRABBING, AND TWISTING PLAINTIFFS TESTICALS CAUSING HIM TO SCREAM IN AGONY.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

297). DEF. REVIS OR DOE M IS PUNCHING OR KNEEING PLAINTIFF IN KIDNEYS AND LOWER SPINE CAUSING PAIN.

298). DEF. BOWES OR CAMPBELL START USING PINKY/FINGER TORTURE TECHNIQUE TO CAUSE PAIN.

299). DEFENDANT CAMPBELL OR BOWES DISLOCATES PLAINTIFFS RIGHT RING FINGER CAUSING HIM TO PASSOUT.

300). SECURITY DEFENDANTS CONTINUE TO ASSAULT AND SEXUALLY ASSAULT PLAINTIFF WHILE HE'S UNCONCIOUS. THERE WAS A VIDEO CAMERA (VIDEO BUBBLE) ABOVE INCIDENT.

301). PLAINTIFF WAKES UP SCREAMING WITH SECURITY DEFENDANTS KNEES ON PLAINTIFFS LEGS, BACK, AND SIDE OF HEAD WHILE CUFFED UP.

302). PLAINTIFF IS HAND CUFFED AND A SECURITY DEFENDANT IS MANGLING HIS FINGER BY BENDING THEM TO CAUSE PAIN.

303). SECURITY DEF SAYS SOMETHING LIKE " HE'S GONNA FRY", THEN DEF. BOWES SAYS TASER, TASER, TASER, AND TASES PLAINTIFF FOUR TO FOURTEEN TIMES IN 60 TO 90 SECONDS WHILE PLAINTIFF IS PINNED DOWN AND HANDCUFFED.

For Legal Use Only

FOR LEGAL USE ONLY

304). DEF. BOWES PER HOSPITAL POLICY KEEPS AND RECORDS TAZER RECORD OF THE TIME, DATES, AND THE NUMBER OF USES AND WHO THE TAZER WAS USED ON.

305). PLAINTIFF WAS YANKED UP AND PULLED IN DIFFERENT DIRECTIONS CAUSING MORE MUSCLE TO TEAR WHILE HE WAS HANDCUFFED

306). PLAINTIFF WOKE UP IN WHEELCHAIR WITH HIS CUFFED ARMS RAISED OVER BACK OF CHAIR WHILE SECURITY DEFENDANT KEPT CAUSING PAIN TO DISLOCATED FINGER ON PURPOSE.

307). PLAINTIFF BEGAIN TO SCREAM IN PAIN AND WAS TASED AGAIN. DEFENDANTS WOULD SLAP PLAINTIFF AND PUNCH HIM IN BACK OF HEAD WHILE ON ELEVATOR. DEFENDANTS CLAMPED THE METAL HANDCUFFS TO HIS WRIST SO TIGHT THAT IT CAUSED EXTREAM PAIN.

For Legal Use Only

308). PLAINTIFF WAS TAKEN TO EMERGENCY ROOM WHERE SECURITY DEF. TOOK HANDCUFFS OFF PLAINTIFF, PUT HIM IN BED, LOCKED HIM UP IN FOUR POINT RESTRAINTS, CLOSED CURTAIN AND BEGAN TO PUNCH PLAINTIFF IN HIS BODY AND TESTICALS WHILE ANOTHER DEFENDANT PUT HIS HANDS OVER PLAINTIFFS

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

MOUTH TO KEEP HIM FROM SCREAMING OUT IN PAIN.

309). SECURITY DEF. WEAR PADDED BLACK GLOVES.

310). SECURITY DEF. WOULD WALK OUT OF ROOM AND STAND GUARD WHILE OTHER DEF. WOULD PUNCH ON PLAINTIFF'S TESTICALS, SIDE TOP OF HEAD, OR PUT PRESSURE ON NERVE POINTS ON HIS BODY TO CAUSE PAIN.

311). DEFENDANTS LEFT ROOM FOR A FEW MINUTES EXCEPT FOR DEF. K (DRAGONFLY TATTOO) HE CONTINUED TO PUNCH PLAINTIFF IN TESTICALS AND STOMACH WHILE HOLDING PLAINTIFFS MOUTH SHUT WITH GLOVED HAND.

312). JANE DOE NURSE CAME INTO PLAINTIFFS ROOM ALONG WITH SECURITY AND INJECTED PLAINTIFF WITH ANTI PSYHCOTIC MEDICATIONS OVER PLAINTIFF'S OBJECTIONS TO BEING ALLERGIC TO HALDOL/ZYPREXA.

For Legal Use Only

313). DEF. DEXTER CAME TO ROOM AND SECURITY LEAD HER OUT. UPON INFORMATION AND BELIEF SHE OR DEF. BURDA TOLD SECURITY DEF. THAT 911 COMMUNICATIONS WERE TRYING TO REACH SECURITY ABOUT PLAINTIFF.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

314). SECURITY DEFENDANTS QUESTIONED EACH OTHER TRYING TO FIGURE OUT WHO CALLED 911.

315). DEF. K SLAPPED PLAINTIFF THE PLACED HIS HAND OVER PLAINTIFF'S MOUTH AND NOSE SO HE COULDN'T BREATH THEN PRESSED HIS THUMB IN HIS EAR CANAL CAUSING EXTREAM PAIN FOR 5-15 SECONDS.

316). DEF. BOWES CAME INTO ROOM AND TOLD OTHER SECURITY DEF. THAT POLICE WERE PULLING UP. DEF. REVIS TOLD CAMPBELL TO OCCUPIE THEM WHILE HE DELETES ALL THE VIDEO EVIDENCE.

317). DEF. BOWES CAME TO PLAINTIFFS BED AND STARTED SLAPPING HIM ACROSS THE FACE MULTIPAL TIMES WHILE ASKING HIM "WHERE HIS HOCKEY BAG OF CLOTHES HE HAD AT 7-11 EARLIER THAT NIGHT". PLAINTIFF TOLD HIM IT WAS HIDDEN IN SOME BUSHES BY SOME APARTMENTS. HE THEN PUNCHED PLAINTIFF ON THE SIDE OF HEAD AND THREATENED TO KILL HIM IF HE SAID ANYTHING TO POLICE.

For Legal Use Only

318). DEF. BOWES INSTRUCTED DEF. K TO MAKE SURE THAT PLAINTIFF DOESENT SPEAK, THEN HE PUNCHED HIM IN THE TESTICALS AS HE RAN OUT OF ROOM CLOSING THE CURTAIN ON HIS WAY OUT.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

319). JANE DOE NURSE CAME TO ROOM DOOR WHERE DEF. K. WAS STANDING AND ADVISED HIM THAT IT WAS PLAINTIFF THAT HAD CALLED 911 / POLICE. DEF. K CAME INTO ROOM CLOSED CURTAIN, COVERED PLAINTIFFS MOUTH AND STARTED PUNCHING AND TWISTING HIS TESTICALS AND PENIS WITH ALL HIS STRENGTH WHILE SAYING " YOU CALLED THE POLICE?", FOR NEARLY A MINUTE, HE STOPPED, LOOKED OUT DOOR, ASSAULTED HIM AGAIN.

320). DEF. K TOLD PLAINTIFF TO SHUT HIS MOUTH AND THAT 'ONE OF THEM WILL KILL HIM IF HE SAYS ANYTHING TO THE POLICE' THEN STOOD BY DOOR EXPECTING SECURITY AND POLICE TO ARRIVE AT ROOM.

321). PLAINTIFF WAS IN EXTREAM PAIN AND PASSED OUT.

322). DEF. K SLAPPED PLAINTIFF AND TOLD HIM AGAIN NOT TO SAY ANYTHING THEN STOOD BY DOOR AS POLICE AND SECURITY          DEFENDANTS CAME TO ROOM. PLAINTIFF WAS SQUIRMING IN PAIN

For Legal Use Only

323). UPON INFORMATION AND BELIEF THERE WERE TWO POLICE OFFICERS.

324). POLICE OFFICERS DID NOT ATTEMPT TO ASK PLAINTIFF ANY QUESTIONS, BUT ALLOWED DEF. K TO OCCUPIE THEIR ATTENTION WITH CONVERSATIONS

FOR LEGAL USE ONLY

ABOUT THEM GOING TO THE SAME SCHOOLS AND KNOWING EACHOTHER, ECT...

325). POLICE DEF. KNEW PLAINTIFF HAD CALLED POLICE REQUESTING HELP PRIOR TO ARRIVING TO HOSPITAL.

326) IT WAS POLICE DEF. DUTY TO INVESTIGATE ALL CIRCUMSTANCES SURROUNDING THE INCIDENT WHICH INCLUDED INTERVIEWING ALL SECURITY WORKING THAT NIGHT, THE ER STAFF, X-RAY TECH'S UPON READING THEIR WRITTEN WITNESS STATEMENTS AND RETURNING TO THE HOSPITAL LATER IN THE MORNING TO OBTAIN VIDEO EVIDENCE AND INTERVIEWING PLAINTIFF.

327). POLICE DEF. ALLOWED SECURITY DEF. TO PREJUDICE THEIR INVESTIGATION AND WERE PREJUDICED BY PLAINTIFF'S PAST CRIMINAL HISTORY AND TRANSIENT STATUS.

For Legal Use Only

328). POLICE DEF. HAD NO EVIDENCE THAT PLAINTIFF WAS ON ANY DRUGS OTHER THAN HEARSAY FROM SECURITY DEF.

329). PLAINTIFF HAD SILENTLY MOUTHED "HELP ME" TO POLICE DEF. AND LOOKED AT THEM WITH PLEADING EYES AS HE WAS BEING PUSHED OUT OF ROOM INTO ANOTHER ROOM AT THEIR REQUEST.

330). POLICE DEF. HAVE TRAINING AND EXPERIENCE IN REGARDS TO THE BODY LANGUAGE OF PEOPLE IN PAIN AND TO BE ABLE TO RECOGNIZE THE DIFFERENCES BETWEEN PEOPLE WHO ARE UNDER THE INFLUENCE AND PEOPLE WHO ARE SUFFERING FROM A MEDICAL CONDITION OR MENTAL ILLNESS.

331). POLICE DEF. INTERVIEWED DEF. CAMPBELL AND BOWES SEPRATELY, POLICE HAD BODY CAMS.

332). POLICE DEF. WERE TOLD BY DEF. CAMPBELL THAT HE WAS ASSAULTED BY PLAINTIFF AND WRESTLED HIM TO THE GROUND WHERE HE PLACED HIM IN HANDCUFFS.

333). DEF. CAMPBELL HAD NO DEFENSIVE WOUNDS, RED MARKS, OR BRUSING TO CO-ROBORATE HIS STATEMENT.

334). DEF. CAMPBELL DID NOT MENTION ANY TASING BY DEF. BOWES OR OTHER SECURITY OFFICERS.

335). DEF. CAMPBELL STATED TO POLICE DEF. THAT HE HAD "CONTACT WITH PLAINTIFF EARLIER IN THE NIGHT AND REMOVED HIM FROM PREMISIS.

For Legal Use Only

FOR LEGAL USE ONLY

336). DEF. CAMPBELL NEVER MADE A LOG OF ANY ENCOUNTER WITH PLAINTIFF OR INCIDENT REPORT OF INCIDENT IN PARAGRAPH 335.

337). UPON INFORMATION AND BELIEF, NON OF THE SECURITY DEF. PROVIDED WRITTEN STATEMENTS UNDER OATH AND PENALTY OF PERJURY ABOUT THE INCIDENTS THAT OCCURED ON 9-30-2018.

338). DEF. BOWES STATED TO POLICE THAT HE WITNESSED PLAINTIFF AND DEF. CAMPBELL FIGHTING AND HE USED HIS TASER TO DRIVE STUN HIM ONCE AND THAT HE DETAINED HIM.

339). DEF. CAMPBELL AND BOWES LIED TO POLICE DEF. ABOUT PLAINTIFF FIGHTING WITH AND BEING DETAINED BY DEF. IN HEART INSTITUTE AT 122 W. 7TH AVE. CAUSING FALSE CHARGES AND UNLAWFUL IMPRISONMENT.

340). SOON AFTER INTERVIEW OF SECURITY DEF. POLICE DEF. GOT WITNESS STATEMENTS FROM X-RAY TECH DEXTER, BURDA, AND STACEY. THEIR STATEMENTS CONTRADICTED DEF. BOWES AND CAMPBELLS STATEMENTS.

341). POLICE DEF. ATTEMPTED TO GET SECURITY FOOTAGE FROM DEF. BOWES AND OR CAMPBELL.

For Legal Use Only

FOR LEGAL USE ONLY

(78)

FOR LEGAL USE ONLY

342). POLICE DEF. KNEW THAT THE EVIDENCE DIDN'T PROVIDE PROBABLE CAUSE AND KNEW SECURITY DEF. HAD WRONGED PLAINTIFF.

343). POLICE DEF. CHARGED PLAINTIFF ANYWAYS WITH CRIMES THAT AMOUNTED TO MORE THAN TRESPASSING.

344). POLICE DEF. LEFT PLAINTIFF AT HOSPITAL KNOWING HE WAS IN DANGER.

345). PLAINTIFF HAD PASSED OUT AFTER BEING MOVED TO ANOTHER ROOM IN WHICH HE WAS AWAKEN BY BEING CHOKED WITH A HAND OVER HIS EYES AND NOSE UNTIL HE PASSED OUT. PLAINTIFF WAS STILL IN RESTRAINTS AND DID NOT SEE THE PERSON.

346). DEF. DOE NURSE OR DOCTOR UNWRAPPED CORD FROM PLAINTIFFS NECK. WHICH LOOKED LIKE IT BELONGS TO BLOOD PRESSURE PAD AND PUSHED HIM OUT ER INTO POLICE CUSTODY.

347). MOST OF THE DOCTORS AND NURSES KNEW ABOUT PRIOR TWO INCIDENTS ON 9-17-2018 AND 9-26-2018 INCLUDING THE INCIDENTS ON 9-30-18 AND CONSPIRED TO DO NOTHING TO HELP OR PROTECT PLAINTIFF IN RETALIATION. NONE

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

OF THE ER HOSPITAL DEF. DID AN ASSESMENT OF PLAINTIFF OR DOCUMENTED NUMBER OF TASER BURNS AND INJURIES KNOWN TO THEM.

348). PLAINTIFF DID NOT STEAL ANYTHING FROM HOSPITAL OR HAVE HOSPITAL PROPERTY IN HIS POSSESSION UPON ARREST.

349). UPON INFORMATION AND BELIEF, SECURITY DEF USED TWO DIFFERENT TASERS ON PLAINTIFF.

350). SECURITY DEF. VIOLATED THEIR TRAINING, AND HOSPITALS POLICIES AND PROCEEDURES IN REGARDS TO THE USE OF TASERS, GUNS, BATONS, HANDCUFFING, AND USE OF FORCE IN EFFECTING PLAINTIFFS DETAINMENT / ARREST.

351). SECURITY DEF. VIOLATED HOSPITALS POLICIES BY CAUSING VIDEO EQUIPMENT TO MALFUNCTION IN ANTICIPATION OF AN HOSTILE ENGAGEMENT WITH PLAINTIFF.

For Legal Use Only

352). SECURITY DEF. VIOLATED HOSPITAL POLICIES AND THEIR DUTY TO PRESERVE EVIDENCE BY INTENTIONALLY DELETING VIDEO EVIDENCE OR ALLOWING VIDEO EVIDENCE TO DELETE ON ITS OWN TO COVER UP THE THEIR VIOLENT CRIMINAL ACTIVITY.

FOR LEGAL USE ONLY

353). HOSPITAL DEF. SECURITY VIDEO DEVICE MANUEL DESCRIBES WHAT KIND OF DATA IS TRANSMITTED AND SAVED TO THE HARD DRIVE THAT LOGS MALFUNCTIONS, DISCONNECTIONS, OVERRIDES, MANUELLY DELETED LOGS, AND SYSTEM ENTRY LOG DATES AND TIMES BY HOSPITAL STAFF.

354), HOSPITAL DEF. SAVED SYSTEM DATA LOGS FOR VIDEO DURING THE INCIDENTS ON 9-17-2018, 9-26-2018, AND 9-30-2018.

355). HOSPITAL DEF. AND SECURITY DEF. LOG IN THE WEAPONS AND TASERS THEY USE DURING EMPLOYMENT.

356). HOSPITAL DEF. AND SECURITY DEF DOWN-LOADED THE TASERS DATA WHICH SHOWS THE EXACT TIMES AND DATES THEY WERE USED TO PRODUCE DURING CRIMINAL/CIVIL LITIGATION OR ADMINISTRATIVE PROCEEDINGS.

For Legal Use Only

357). SECURITY DEF. HAVE MILITARY BACKGROUND AND HAVE BEEN DEPLOYED OVER SEAS IN WHICH THEY HAVE ENGAGED IN BATTLE CAUSING HUMAN CASUALTIES.

358). SECURITY DEF. HAVE RELATIONSHIPS WITH EMPLOYEE'S AT COUNTY PUBLIC DEFENDERS OFFICE.

FOR LEGAL USE ONLY

359). HOSPITAL DEF. HAVE RELATIONSHIPS WITH EMPLOYEE'S AT COUNTY PUBLIC DEFENDERS OFFICE AND COUNTY PROSECUTORS OFFICE

360). POLICE DEF. HAVE RELATIONSHIPS WITH HOSPITAL STAFF, PUBLIC DEFENDERS STAFF AND OR COUNTY PROSECTOR'S OFFICE STAFF.

361). DEF, REVIS IS MARRIED TO ERICA REVIS, WHO WORKS FOR PUBLIC DEFENDERS OFFICE AS AN INVESTIGATOR UNDER ATTORNEY JOHN WHALEY.

For Legal Use Only

FOR LEGAL USE ONLY

# VI.   LEGAL CLAIMS

## CLAIM (1): NEGLIGENCE / GROSS NEGLIGENCE

362). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 1 THROUGH 103.

**✦ 09-17-2018 INCIDENT ✦**

DEFENDANT OFFICERS HAD THE EXISTENCE OF A DUTY TO INVESTIGATE AND PROTECT PLAINTIFF FROM INJURY, OFFICERS KNEW THEIR WAS A DANGER TO PLAINTIFF, PATIENTS AND HOSPITAL STAFF AND DID NOT CONFIRM OR ADVISE ANYONE OF THE DANGER THAT WAS COMPLAINED OF BY PLAINTIFF. PLAINTIFF SUFFERED INJURY DUE TO OFFICERS CONSCIOUS, VOLUNTARY ACTIONS AND OMISSIONS IN RECKLESS DISREGARD OF THEIR LEGAL DUTY AND THE CONSEQUENCES OF THE HARMFUL ACTIONS THAT PLAINTIFF HAD TO SUFFER THRU MENTALLY, EMOTIONALLY, AND PHYSICALLY.

For Legal Use Only

## CLAIM (2): INVOLUNTARY ADMISSION

363). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 22 THROUGH 44.

**✦ 09-17-2018 INCIDENT ✦**

DEFENDANT OFFICERS DISCOVERED AFTER PLAINTIFF BEGGED THEM TO CHECK A SUSPECT FOR A GUN, THAT PLAINTIFF WAS NOT PARANOID OR HAD COMITTED

NO CRIME. OFFICERS DID NOT ADVISE PLAINTIFF THAT HE WAS BEING HELD INVOLUNTARILLY FOR EVALUATION AT HOSPITAL AND DID NOT ADVISE HOSPITAL TO RELEASE PLAINTIFF AFTER DISCOVERING HE WAS NOT PARANOID AND WAS TELLING THE TRUTH. OFFICERS CAUSED HOSPITAL STAFF TO HOLD PLAINTIFF INVOLUNTARILLY WITHOUT PROBABLE CAUSE.

## CLAIM (3) : NEGLIGENCE / GROSS NEGLIGENCE

364). PLAINTIFF REALLEGES AND INCORPORATES BY REFERENCE PARAGRAPHS 47 THROUGH 103.

**#09-17-2018 INCIDENT**

HOSPITAL DEFENDANTS HAD A DUTY OF CARE AND A DUTY TO PROTECT PLAINTIFF FROM UNREASONABLE RISKS OF HARM AND THEY BREACHED THIS DUTY BY NOT KEEPING HIM SAFE MENTALLY, EMOTIONALLY, AND PHYSICALLY.

## CLAIM (4) : UNLAWFUL DETENTION

365). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 47 THROUGH 103.

**# 09-17-2018 INCIDENT**

HOSPITAL DEFENDANTS CONTINUED TO DETAIN PLAINTIFF UNLAWFULLY UPON LEARNING THAT HE WAS NOT PARANOID OR A DANGER TO HIMSELF OR OTHERS, OR SUFFERING FROM A SEVERLY GRAVE DISABILITY. DEFENDANTS USED MEDICATIONS AS A RESTRAINING DEVICE TO PUT PLAINTIFF TO SLEEP.

For Legal Use Only

CLAIM(5): ASSAULT AND BATTERY

366). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 49, 50, 51, 65 THROUGH 88, AND 98.

* 09-17-2018 INCIDENT *

HOSPITAL DEFENDANTS MADE PLAINTIFF FEAR THAT THEY WERE GOING TO HARM HIM WITH THREATS THEN ENGAGED IN OFFENSIVE TOUCHING AND CONTACT BY FORCIBLY HOLDING PLAINTIFF DOWN ASSAULTING HIM AND FORCIBLY INJECTING HIM WITH MEDICATIONS WITHOUT HIS CONSENT, HARMING HIM MENTALLY, EMOTIONALLY AND PHYSICALLY BY ALSO SPIKING HIS DRINKS WITH MEDICATIONS.

CLAIM(6): MEDICAL MALPRACTICE — PROFESSIONAL MALPRACTICE

367). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 49, 50, 51, 65 THROUGH 88 AND 98.

* 09-17-2018 INCIDENT *

For Legal Use Only

PLAINTIFF HAS A LIBERTY INTREST IN NOT WANTING ANTI PSYCHOTIC MEDICATIONS ADMINISTERED INTO HIM. PLAINTIFF DID NOT CONSENT TO THE MEDICATION AND HOSPITAL DEFENDANTS KNEW THAT HE HAD MEDICATIONS LISTED IN HIS MEDICAL HISTORY AS ALLERGIC REACTIONS. DEFENDANTS USED MEDICATIONS AS A RESTRAINING/SLEEP DEVICE IN VIOLATION OF LAWS & HOSPITAL POLICIES & PROCEEDURES.

FOR LEGAL USE ONLY

PLAINTIFF WAS ADMITTED AS A PATIENT, INVOLUNTARILY INJECTED WITH MEDICATIONS THAT RESTRAINED HIM TO ROOM.

CLAIM (7): INTENTIONAL INFLICTION OF EMOTIONAL AND MENTAL DISTRESS.

368). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 47 THROUGH 103.

* 09-17-2018 INCIDENT *

HOSPITAL DEFENDANTS PURPOSELY ENGAGED IN OUTRAGEOUS CONDUCT THAT CAUSED PLAINTIFF TO FEEL EXTREMELY UPSET MENTALLY AND EMOTIONALLY. DEFENDANTS ACTED IN A WAY THAT WAS EXTREME FOR THE PURPOSE OF CAUSING EMOTIONAL DISTRESS. PLAINTIFF ACTUALLY SUFFERED SEVER EMOTIONAL DISTRESS BECAUSE HE CAN'T TRUST HOSPITALS OR SECURITY OFFICERS AND IS ACTUALLY AFRAID OF THEM. THE DEFENDANTS CONDUCT CAUSED PLAINTIFF THE EMOTIONAL DISTRESS / MENTAL ANGUISH.

For Legal Use Only

CLAIM (8): PERJURY / FABRICATING STATEMENTS

369). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 104 THROUGH 124.

* 09-26-2018 INCIDENT *

DEFENDANT INTENTIONALLY WROTE AN INCIDENT REPORT FALSELY UNDER OATH AND PENALTY OF PERJURY THAT CONTRADICTS THE VIDEO THAT

FOR LEGAL USE ONLY

DESCRIBES WHAT REALLY HAPPENED AT 1615 E QUEEN ST. ON 09-26-2018. DEFENDANT WROTE THE REPORT TO HAVE PLAINTIFF DETAINED UNLAWFULLY.

CLAIM (9): INVOLUNTARY ADMISSION

370). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 104 THROUGH 128.
* 09-26-2018 INCIDENT *

DEFENDANT OFFICERS CONSPIRED TO HAVE PLAINTIFF INVOLUNTARILY COMITTED TO SACRED HEART HOSPITAL KNOWING HE WASENT SUFFERING FROM A GRAVE DISABILITY. DEFENDANT(S) LIED ABOUT WHAT WAS IN BUCKET AND FABRICATED REPORT TO CAUSE AN UNLAWFUL DETENTION. DEFENDANT ENGAGED IN OFFENSIVE TOUCHING AND CUFFING TO DETAIN PLAINTIFF WITHOUT PROBABLE CAUSE.

CLAIM (10): NEGLIGENCE / GROSS NEGLIGENCE

371). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 104 THROUGH 128.
* 09-26-2018 INCIDENT *

DEFENDANT OFFICERS HAD THE DUTY TO INVESTIGATE PLAINTIFFS COMPLAINT AND TO PROTECT PLAINTIFF FROM INJURY INCLUDING A FALSE ARREST / DETAINMENT AND OFFENSIVE TOUCHING AND HANDCUFFING INCLUDING ASSAULTIVE CONDUCT WHILE AT HOSPITAL. DEFENDANTS ACTIONS WERE THE

For Legal Use Only

FOR LEGAL USE ONLY

DIRECT CAUSE OF PLAINTIFFS INJURIES BY HOSPITAL STAFF.

CLAIM (11): ASSAULT AND BATTERY

372). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 118 THROUGH 128.

* 09-26-2018 INCIDENT *

DEFENDANT OFFICER AND HOSPITAL STAFF MADE PLAINTIFF FEAR THAT THEY WERE GOING TO HARM HIM WITH THREATS, THEN ENGAGED IN OFFENSIVE TOUCHING, HANDCUFFING AND RESTRAINING. HOSPITAL DEFENDANTS USED ABUSIVE TACTICS, AND PRESSURE POINTS TO CAUSE PLAINTIFF TO FEEL PAIN AND INJURY.

CLAIM (12): CONSPIRACY

373). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 104 THROUGH 119.

* 09-26-2018 INCIDENT *

DEFENDANT OFFICERS ENTERED INTO A AGREEMENT TO CONSPIRE TO VIOLATE PLAINTIFF'S RIGHT TO BE FREE FROM OFFENSIVE TOUCHING, CUFFING, AND UNLAWFUL DETAINMENT DURING CONVERSATION ON BODY CAMERAS UPON INFORMATION AND BELIEF.

For Legal Use Only

FOR LEGAL USE ONLY

CLAIM (13): NEGLIGENCE / GROSS NEGLIGENCE

374). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 129 THROUGH 183.

* 09-26-2018 INCIDENT *

HOSPITAL DEFENDANTS WERE NEGLIGENT WHEN THEY FAILED TO USE REASONABLE CARE BY NOT FORCIBLY INJECTING PLAINTIFF WITH MEDICATION OUT OF ANGER KNOWING HE HAD ALLERGY TO MEDICATIONS. DEFENDANTS HAD A DUTY TO PROTECT PLAINTIFF FROM ASSAULTS AND BREACHED THAT DUTY BY ASSAULTING HIM WITH FORCEFUL INJECTIONS INTENTIONAL INFLICTION OF PAIN THROUGH NERVE PRESSURE POINTS AND CAUSING HIM SEVER PAIN BY SLAMMING HIS HEAD INTO BED RAIL CAUSING HIM TO BLACKOUT AND OR HAVE SEIZURE. DEFENDANTS WERE INDIFFERENT TO HIS MEDICAL NEEDS WHEN THEY DID NOT COME IN TO HIS ROOM TO DO AN MEDICAL ASSESMENT ON PLAINTIFF'S HEAD TO MAKE SURE THERE WAS NO INJURIES TO HEAD OR BRAIN. DEFENDANTS CAUSED PLAINTIFF TO SUFFER MENTALLY, EMOTIONALLY, AND PHYSICALLY DUE TO THEIR ACTIONS

For Legal Use Only

CLAIM (14): UNLAWFUL DETENTION

375). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 126 THROUGH 183.

* 09-26-2018 INCIDENT *

FOR LEGAL USE ONLY

HOSPITAL DEFENDANTS DID NOT FOLLOW POLICY AND
PROCEEDURES OR ABIDE BY THE LAWS AND RULES
DESCRIBED IN THE INVOLUNTARY EVALUATION
PROCEEDURES. PLAINTIFF SHOULD HAVE BEEN
EVALUATED WITHIN 3 TO 12 HOURS AFTER MEDICAL
CLEARENCE BY PSYCH DOCTOR TO DETERMINE IF HE
SUFFERED FROM A SEVER GRAVE DISABILITY
THAT CAUSED HIM TO BE A DANGER TO HIMSELF
OR OTHERS. DEFENDANTS WERE RETALIATING
AGAINST HIM AND CARED NOTHING ABOUT HIS
RIGHTS. DEFENDANTS USED MEDICATIONS AS A
CONTROL/RESTRAINING DEVICE

CLAIM (15); CRUEL AND UNUSUAL PUNISHMENT
376). PLAINTIFF REALLEGES AND INCORPORATES BY
REFRENCE PARAGRAPHS 126 THROUGH 185.
# 09-26-2018 INCIDENT #
HOSPITAL DEFENDANTS WERE STATE ACTORS IN
SECURED AREA OF HOSPITAL AND HAD ACTED
MALICIOUSLY AND SADISTICALLY SOLELY TO CAUSE
PAIN AND HARM PLAINTIFF, VIOLATING CLEARLY
ESTABLISHED LAW.

For Legal Use Only

CLAIM (16); MEDICAL MALPRACTICE
377). PLAINTIFF REALLEGES AND INCORPORATES
BY REFRENCE PARAGRAPHS 129 THROUGH 183.
PLAINTIFF HAD A RIGHT TO REFUSE MEDICATION AS
A PATIENT, HAD A RIGHT TO NOTICE OF EFFECTS OF

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

MEDICATIONS, AND WAS TREATED WITH MEDICATIONS THAT WERE DOCUMENTED IN HIS MEDICAL RECORDS AS ALLERGIC MEDICATIONS. HOSPITAL DEFENDANTS DEVIATED FROM THE STANDARD OF CARE EXPECTED OF (A) PROFESSIONAL.

CLAIM (17): UNLAWFUL RESTRAINT.

378). PLAINTIFF REALLEGES AND INCORPORATES 134 REFRENCE PARAGRAPHS 129 THROUGH 136.

* 09-26-2018 INCIDENT *

DEFENDANTS VIOLATED WASHINGTON LAWS, CODES, AND OR HOSPITAL POLICY AND PROCEEDURES BY USING RESTRAINTS ON PLAINTIFF. DEFENDANTS KNEW RESTRAINTS MAY ONLY BE USED WHEN NECESSARY TO PREVENT THE "PATIENT" FROM HARMING HIMSELF OR OTHERS.

CLAIM (18): INTENTIONAL INFLICTION OF MENTAL AND EMOTIONAL DISTRESS.

379). PLAINTIFF REALLEGES AND INCORPORATES 154 REFRENCE PARAGRAPHS 104 THROUGH 185.

* 09-26-2018 INCIDENT *

DEFENDANTS ENGAGED IN OUTRAGEOUS CONDUCT THAT CAUSED PLAINTIFF TO FEEL EXTREMELY UPSET MENTALLY AND EMOTIONALLY. DEFENDANTS ACTED IN A WAY THAT WAS EXTREME, FOR THE PURPOSE OF CAUSING MENTAL AND OR EMOTIONAL DISTRESS. PLAINTIFF HAS PTSD AND CAN NO LONGER TRUST POLICE, HOSPITALS, DOCTORS, NURSES OR SECURITY. DEFENDANTS CONDUCT CAUSED PLAINTIFF THE MENTAL / EMOTIONAL DISTRESS.

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

CLAIM (19): CONSPIRACY

380). PLAINTIFF REALEGES AND INCORPORATES 134
REFRENCE PARAGRAPHS 129 THROUGH 183.
# 09-26-2018 INCIDENT #
DEFENDANTS ENTERED INTO AN AGREEMENT TO
CONSPIRE TO ENGAGE IN THE CLAIMS 13, 14, 15,
16, 17, AND 18 WITH TOTAL DISREGARD OF HIS
RIGHTS.

CLAIM (20): FREEDOM OF SPEECH/RETALIATION
381). PLAINTIFF REALLEGES AND INCORPORATES BY
REFRENCE PARAGRAPHS 103, AND 129 THROUGH 361
# 09-17-18, 09-26-18, 09-30-18 INCIDENTS
DEFENDANTS DENIED PLAINTIFF HIS RIGHT TO
COMPLAIN ABOUT THE ACTIONS AND ACTIVITIES
DESCRIBED IN CLAIMS ABOUT HOSPITAL STAFF.
THEY THEN RETALIATED AGAINST PLAINTIFF FOR
BEING THE CAUSE OF THE 9-17-2018 INCIDENT OR WERE
TRYING TO COVER IT UP OR BECAUSE PLAINTIFF WANTED
TO MAKE COMPLAINT AND MOVE FORWARD WITH
CRIMINAL AND CIVIL LITIGATION. PLAINTIFF
SUFFERED INJURIES DUE TO DEFENDANTS ACTIONS.

CLAIM (21): ASSAULT AND BATTERY
382). PLAINTIFF REALLEGES AND INCORPORATES 13
REFRENCE PARAGRAPHS 184 THROUGH 251.
# 09-30-2018 INCIDENT #
SECURITY DEFENDANTS CAUSE PLAINTIFF TO FEAR FOR

For Legal Use Only

FOR LEGAL USE ONLY

HIS LIFE BY BELEIVING HE WAS GOING TO BE ASSAULTED
WHEN HE WAS THREATEND WITH BATON, GUN, AND CAR,
CAUSING PLAINTIFF TO BREAK WINDOWS TO ENTER A
BUILDING TO CALL 911.

## CLAIM (22): EXCESSIVE USE OF FORCE —
## CRUEL AND UNUSUAL PUNISHMENT.

383). PLAINTIFF REALLEGES AND INCORPORATES  BY
REFRENCE PARAGRAPHS 250 THROUGH 357
* 09-30-2018  INCIDENT *
THE SUPERVISOR OF SECURITY SET INTO MOTION A
SERIES OF ACTS BY DEFENDANTS, KNOWINGLY
PARTICIPATING AND REFUSING TO TERMINATE A
SERIES OF ACTS BY DEFENDANTS WHICH THE SUPERVISOR
KNEW OR REASONABLY SHOULD HAVE KNOWN WOULD CAUSE
MALICIOUS AND SADISTIC PAIN AND INJURY.
SECURITY DEFENDANTS EMPLOYED EGREGIOUS,
SHOCKING ABUSES OF POWER FOR THE PURPOSE TO
TORTURE AND CAUSE HARM.  SUPERVISOR AND OR
DEFENDANTS DISABLED OR DELETED VIDEO
CAMERA EVIDENCE AND OR FAILED TO FOLLOW
PROCEEDURES USED TO IDENTIFY USES OF EXCESSIVE
FORCE, ENSURING THAT VIOLATORS ESCAPED PUNISH-
MENT

For Legal Use Only

## CLAIM (23): UNLAWFUL RESTRAINT
384). PLAINTIFF REALLEGES AND INCORPORATES BY
REFRENCE PARAGRAPHS 302  AND 308

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

\*09-30-2018 INCIDENT\*

DEFENDANTS VIOLATED WASHINGTON LAWS, CODES, OR HOSPITALS POLICIES AND PROCEEDURES BY USING RESTRAINTS ON PLAINTFF FOR THE SOLE PURPOSE OF ASSAULTING HIM BEFORE MALICIOUSLY PROSECUTING / UNLAWFULLY IMPRISONING HIM. DEFENDANTS KNEW RESTRAINTS MAY ONLY BE USED WHEN NECESSARY TO PREVENT THE "PATIENT" OR "VISITOR" FROM HARMING HIMSELF OR OTHERS.

CLAIM (24): NEGLIGENCE / GROSS NEGLIGENCE
385). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 184 THROUGH 361.
\# 09-30-2018 INCIDENT. \*
SECURITY, NURSES, DOCTORS AND X-RAY TECHS HAD A DUTY TO PROTECT AND CARE FOR PLAINTIFF AS A VISITOR AND PATIENT. DEFENDANTS BREACHED THIS DUTY TO KEEP PLAINTIFF SAFE AND THE HARM THAT HE SUFFERED WAS THE DIRECT CAUSE OF THE DEFENDANTS ACTIONS.

CLAIM (25): MEDICAL MALPRACTICE.
386). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 312, 345-347
PLAINTIFF HAD A RIGHT TO REFUSE MEDICATIONS AS A PATIENT, HAD A RIGHT TO NOTICE OF EFFECTS OF MEDICATIONS, AND WAS TREATED WITH MEDICATION THAT WERE DOCUMENTED IN HIS MEDICAL

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

RECORDS AS KNOWN ALLERGIC MEDICATIONS.
HOSPITAL DEFENDANTS INTENTIONALLY DEVIATED
FROM THE STANDARD OF CARE EXPECTED OF A
PROFESSIONAL.

CLAIM(26): MALICIOUS PROSECUTION
387): PLAINTIFF REALLEGES AND INCORPORATES BY
REFRENCE PARAGRAPHS 184 THROUGH 361
✳ 09-30-2018 INCIDENT ✳
SECURITY DEFENDANTS AND OR [UPON INFORMATION
AND BELIEF] POLICE DEFENDANTS WRONGFULLY
CAUSED CRIMINAL CHARGES TO BE FILED FOR
FELONY ASSAULT AND BURGLARY WITHOUT
PROBABLE CAUSE.

CLAIM(27): FALSE IMPRISONMENT.
388). PLAINTIFF REALLEGES AND INCORPORATES BY
REFRENCE PARAGRAPHS 184 THROUGH 352
✳ 09-30-2018 INCIDENT ✳

For Legal Use Only

SECURITY DEFENDANT(S) AND OR POLICE DEFENDANTS
INTENDED TO CONFINE PLAINTIFF. PLAINTIFF WAS
CONSCIOUS OF THE CONFINEMENT, DID NOT CONSENT
TO THE CONFINEMENT, THE CONFINEMENT WAS
NOT PRIVILAGED, AND PLAINTIFF WAS DETAINED
WITHOUT LEGAL JUSTIFICATION.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

CLAIM (28): VICARIOUS LIABILITY / RESPONDENT SUPERIOR.

389). PLAINTIFF INCORPORATES AND REALLEGES BY REFRENCE PARAGRAPHS 47 THROUGH 103, AND 129 THROUGH 363.

THE SUPERVISOR'S SETTING IN MOTION A SERIES OF ACTS BY THEMSELVES AND OR BY OTHERS, OR BY KNOWINGLY REFUSING TO TERMINATE A SERIES OF ACTS BY OTHERS, WHICH THE SUPERVISOR KNEW OR REASONABLY SHOULD HAVE KNOWN WOULD CAUSE OTHERS TO INFLICT A CONSTITUTIONAL INJURY. THERE'S A CAUSAL CONNECTION BETWEEN THE SUPERVISOR'S PERSONAL INVOLVEMENT IN THE CONSTITUTIONAL DEPRIVATION AND WRONGFUL CONDUCT THAT LEAD TO THE CONSTITUTIONAL VIOLATIONS.

CLAIM (29): INTENTIONAL INFLICTION OF MENTAL AND EMOTIONAL DISTRESS.

390). PLAINTIFF REALLEGES AND INCORPORATES BY REFRENCE PARAGRAPHS 184 THROUGH 361.

✱ 09-30-2018 INCIDENT ✱

DEFENDANTS ENGAGED IN OUTRAGEOUS, AND DEADLY CONDUCT THAT CAUSED PLAINTIFF TO FEEL A APPREHENSION OF DEATH AND FEEL EXTREMELY UPSET MENTALLY AND EMOTIONALLY. DEFENDANTS ACTED IN A WAY THAT WAS EXTREME, FOR THE PURPOSE OF CAUSING MENTAL AND OR

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

EMOTIONAL DISTRESS. PLAINTIFF HAS SEVER PTSD
DUE TO DEFENDANTS ACTIONS AND INACTIONS,
AND CAN NO LONGER TRUST POLICE, HOSPITALS,
DOCTORS, NURSES, OR SECURITY. DEFENDANTS
CONDUCT CAUSED PLAINTIFF THE MENTAL AND
EMOTIONAL DISTRESS.


              CLAIM (30): SPOILIATION
391). PLAINTIFF REALLEGES AND INCORPORATES BY
REFRENCE PARAGRAPHS 2, 45, 67, 100, 112, 114, 129 THROUGH
135, 146, 300, 316, 329, 331, 351, 352, 353, 354 - THROUGH
356
* ALL INCIDENTS *
UPON INFORMATION AND BELIEF, DEFENDANTS KNEW
OR SHOULD HAVE KNOW THAT THEIR ACTIONS WOULD
BE COMPLAINED OF, AND IN FACT PLAINTIFF ADVISED
THEM THAT HE WOULD BE PERSUEING COMPLAINTS
WHICH PLACED DEFENDANTS ON NOTICE TO
PRESURVE EVIDENCE. PLAINTIFF BELIEVES SOME
OF THE DEFENDANTS INTENTIONALLY DESTROYED
DELETED, MISPLACED VIDEO EVIDENCE THAT PLACED
THEM IN A BAD LIGHT AND WOULD HAVE PROVEN
PLAINTIFFS CASE. IN ADDITION, PLAINTIFF ALSO
BELEIVES THAT HOSPITAL DEFENDANTS MAY
HAVE DISCONNECTED OR CAUSE VIDEO DATA TO
MALFUNCTION SO THEY COULD ENGAGE IN
ABUSIVE IF NOT MURDEROUS ACTIVITY WITH —

For Legal Use Only

FOR LEGAL USE ONLY

(97)

FOR LEGAL USE ONLY

WHERE ARE THE OFFICERS USE OF FORCE
STATEMENTS AND INCIDENT REPORTS

For Legal Use Only

FOR LEGAL USE ONLY

OUT BEING VIEWED OR RECORDED. IF THIS WAS THE CASE, DEFENDANTS HAVE NO EVIDENCE THAT PROVES MALFUCTION AND HAS DESTROYED VIDEO. THE OBLIGATION TO PRESERVE AROSE AT THE TIME OF INCIDENTS AND IF EVIDENCE IS UNAVAILABLE THEN A ADVERSE INFERENCE INSTRUCTION OR DEFAULT JUDGMENT WOULD BE PROPER IN THIS CASE.

## VII.

## ✳✳ PRAYER FOR RELIEF ✳✳

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTERS JUDGMENT:

392). A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES.

(A.) 393). PRELIMINARY AND PERMANENT INJUCTION ORDERING DEFENDANT(S) PROVIDENCE MEDICAL CENTERS TO  REQUIRE SECURITY OFFICERS TO WEAR BODY VIDEO CAMERAS THAT ACTIVATE IN HALLWAYS, WAITING ROOMS, ETC, PARKING LOTS, AND WHEN THEY STEP OUT OF PATROL CARS. THE SERVERS SHOULD BE IN A ROOM THAT SECURITY CAN NOT ACCESS AND DATA SHOULD BE AVAILABLE ON 6 MONTH CYCLES INCASE OF LITIGATION. IN AND OUT DOOR VIDEO SURVILILENCE SHOULD BE ON

FOR LEGAL USE ONLY

60 TO 90 DAY CYCLES INCASE OF LITIGATION AND TWO DATA SERVERS SHOULD BE AVAILABLE. ONE OF THE SERVERS SHOULD BE OFF LIMITS TO SECURITY.

(B.) SECURITY SHOULD HAVE A TYPE OF GPS WATCH OR DEVICE THAT PINPOINTS EXACT LOCATIONS IN HOSPITAL AND IN SECURITY CAR.

(C.) SECURITY SHOULD BE EVENLY MIXED IN RACE AND SEX DURING SHIFTS TO AVOID UNKNOWN RACE CLIQUES OR ALL MALE CLIQUES.

(D.) ALL INCIDENTS HOWEVER SMALL SHOULD BE IN A LOG AND SWORN TO UNDER OATH AND PENALTY OF PERJURY WITHIN 30 MINUTES OF INCIDENTS.

(E.) BEFORE ORDERING FORCED MEDICATIONS, THERE SHOULD BE A HAND HELD VIDEO RECORDER AVAILABLE TO RECORD ALL STEPS TAKEN PRIOR TO AND AFTER EMERGENCY FORCED MEDICATION OR WHEN EVER MEDICATION IS FORCED INTO A NON CONSENTING PERSONS BODY.

(F.) VIDEO RECORDER SHOULD BE USED PRIOR TO AND AFTER INVOLUNTARILY RESTRAINING A PERSON WHENEVER POSSIBLE.

(G.) IN REGARDS TO E AND F VIDEO SHOULD BE SAVED 60 TO 90 DAYS.

(H.) IN REGARDS TO VIDEO. IF ITS TO EXPENSIVE TO RETAIN. THEN ANYTIME AN INCIDENT OCCURS THE PERSON WHO MAY HAVE FELT VIOLATED SHOULD BE PROVIDED WITH A FORM TO MAKE

For Legal Use Only

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

A COMPLAINT WITHIN A CERTAIN TIME PERIOD SO A LITIGATION HOLD CAN BE IMMEDIATELY PLACED ON VIDEO / DATA EVIDENCE.

(I.) THERE SHOULD BE AN AUTOMATIC REVIEW OF ALL VIOLENT INCIDENTS BY THE DEPT OF HEALTH.

394). CRIMINAL CHARGE BROUGHT AGAINST DEFENDANTS WHO BROKE LAW OR FINED OR SUSPENDED.

395). COMPENSATORY DAMAGES IN THE AMOUNT OF $ 20 MILLION AGAINST DEFENDANTS

396). PUNITIVE DAMAGES IN THE AMOUNT OF $ 100 MILLION AGAINST DEFENDANTS OR 0.5% OF THE TOTAL NET WORTH OF PROVIDENCE MEDICAL SERVICES.

For Legal Use Only

397). SETTLEMENT AGREEMENT OF $ 10 MILLION (FIRM) BETWEEN ALL PARTIES PRIOR TO A ANSWER TO THIS COMPLAINT OR $15 MILLION AFTER AND BEFORE SUMMARY JUDGEMENT OR $ 20 MILLION (FIRM) AFTER SUMMARY JUDGEMENT AND BEFORE TRIAL.

FOR LEGAL USE ONLY

FOR LEGAL USE ONLY

398). PLAINTIFF REQUEST THE COURT TO ALLOW THE JURY TO MAKE PUNITIVE DAMAGES AWARD LARGE ENOUGH TO STING OR CAUSE DEFENDANTS TO FEEL PUNISHMENT AND TO MAKE SURE INCIDENT(S) WON'T HAPPEN AGAIN.

399). A JURY TRIAL ON ALL TRIABLE ISSUES.

400). ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER, AND EQUITABLE.

DATED: JANUARY 30, 2019

CLIFTON D. OLIVER
2001 SW. SALMON ST
REDMOND, OR. 97756

VIII.        VERIFICATION.

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND, AS TO THOSE, I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT SPOKANE WA ON JAN 30, 2019.

CLIFTON D. OLIVER.

For Legal Use Only

FOR LEGAL USE ONLY